FRANCIS BRIDIER, EX'R OF SUSAN MURPHY, DECEASED, APPELLANT, VS. DAVID L. YULÉE, CAVEATOR, APPELLEE.

1. It is within the *province* of the Supreme Court, upon appeal or writ of error, to look beyond the bill of exceptions and to consider errors apparent upon the face of the record; but to induce the Court to reverse a judgment for an error not embraced in the bill of exceptions, or not properly assigned, requires a strong case, and one showing that it will be manifestly against right to permit the judgment to stand.

2. The act of 1852-'3, (Pamph. Laws, 100,) makes it the duty of the Supreme Court to review the rulings of the Circuit Courts upon motions for new trials.

3. Where the record shows that there was a total absence of evidence to support the verdict, the Supreme Court will not hesitate to set the verdict aside; but where there is *conflicting* evidence, the preponderance against the propriety of the verdict must be very strong to induce the Court to interfere.

4. Although a witness, incompetent through interest, be improperly permitted to testify at the trial, yet, if it appear from the record that the testimony of the witness is so abundantly corroborated and sustained by the testimony of other witnesses as to make it improbable that the jury were *misled* by the testimony of such witness, so as to cause them to make a finding which they would not otherwise have made, the verdict will not for that cause be disturbed.

This case was decided at Jacksonville.

The statement contained in the opinion of the Court is sufficient for the understanding of the points therein decided.

*Geo. R. Fairbanks* for appellant.

*F. I. Wheaton* for appellee.

DuPONT, C. J., delivered the opinion of the Court.

This was an issue of *devisavit vel non*, tried in the Circuit Court of St. Johns county, and arose upon an attempt to set up a certain paper writing, purporting to have been executed by Susan Murphy, deceased, and to establish the same as her last will and testament. The caveator rested his defence upon two grounds, viz: Want of mental capacity, and undue influence. To establish and rebut these grounds, a large amount of evidence was adduced on either side. The jury by their verdict sustained both grounds, and thereupon the Court pronounced as its judgment, " that the said will of June 4th, A. D. 1856, be held and declared invalid and of no effect." The counsel for the propounder of the will, then moved the Court to grant a new trial, upon grounds which will hereafter be stated. The motion for the new trial was denied, and thereupon an appeal was taken, which brings the proceedings before this Court for review.

The errors assigned in this Court are as follows, viz:

" 1st. In allowing the testimony of Miss Striska to go to the jury, she having an interest under a former will and codicil, purporting to have been executed by the testatrix, Susan Murphy *alias* Susan Linde.

" 2d. The testimony was irrelevant, and in other respects legally inadmissible.

"3d. In allowing the former will, codicil and deeds of trust to be read as evidence to the jury, inasmuch as the only question raised in the cause by the pleadings is *devisavit vel non*, to wit : want of capacity to make a will, and undue influence brought to bear upon the mind of the testatrix, at the time of its execution or prior thereto.

"4th. The Court erred in refusing to grant a new trial upon the grounds stated in the motion.

"5th. The Court erred in sustaining one part of the verdict of the jury and overruling the other."

In looking into the bill of exceptions as presented in the record, it will be readily perceived that it affords no ground on which to base the first, second, third and fifth errors assigned. The basis of the first error is the admission of the testimony of Miss Striska. It appears that when the deposition of this witness was offered at the trial, it was objected to by the counsel for the propounders of the will, but the *ruling* of the Court, which permitted it to be read, does not appear to have been *excepted to*, and there is no general *exception* made, as is usual in the preparation of a bill of exceptions. The second, third and fifth errors are in the like category with the first, there being no exception, either special or general, to any of the rulings of the Court, upon which these several errors are attempted to be predicated. Indeed, the only exception that seems to have been even *noted* to any of the *rulings* of the Court, is the one which forms the predicate of the *fourth* assignment, to wit: the refusal to grant a new trial.

Before proceeding to consider the point involved in the fourth assignment, which is the only one that is properly presented for our consideration, it may not be improper to note the mistake of fact that occurs in the statement of the *third* assignment. It is made a ground of error in that assignment, that the Court allowed the "former will and codicil" to be read in evidence. The report of the trial, as it appears in the bill of exceptions, shows the reverse to have been the fact; for it is there stated that "the reading of the former will of Mrs. Murphy was objected to, and *objection sustained by the Court.*" With respect to the fifth assignment, we have been unable to find in the record anything to sustain the allegation, that the Court "sustained one part of the verdict, and overruled the other."

We have intimated that the point raised by the fourth assignment, to-wit: the propriety of the refusal to grant

a new trial, is the only one that has been properly presented for our consideration. In making this remark, we are not to be understood as holding that we are to be limited and restricted to the errors specially assigned. In the case of Proctor vs. Hart, (5 Fla. Repts. 465,) it was held that, upon writ of error, it was the *province* of the Court to look beyond the bill of exceptions, and to consider errors apparent upon the face of the record. Such was the ruling in that case, and it meets our entire approval; but to induce the Court to reverse a judgment for an error not properly assigned, requires a strong case, and one that shows that it will be manifestly against right to permit the judgment to stand. Such is not the case presented by this record, and we shall therefore confine our investigation to the matter of the new trial.

The grounds for the motion for the new trial are as follows, viz :

"1st. Because the verdict of the jury is contrary to the evidence, and the weight of the evidence.

"2d. Because the verdict of the jury is contrary to the charge of the Court."

Prior to the passage of the act of 1852-3, (Pamph. Laws, 100,) this Court, entertaining the English doctrine, invariably refused to interfere with the *discretion* of the inferior Courts in granting or refusing to grant a new trial. In the celebrated case of Carter vs. Bennett, (4 Fla. Repts. 284,) which was decided at the January Term, 1852, the refusal to grant a new trial was made one of the main grounds upon which the reversal of the judgment was claimed; and it was argued with great skill and ability. The Court, however, refused to sustain the point, saying: "The whole framework of our judicial structure is derived from our English forefathers, and the practice of reviewing the decisions of a Court, upon motions for a new trial, is wholly unknown to

the judicial system of that country. Such, also, is the case with the Courts of the United States; while the Courts of the several States seem to be about equally divided upon the question." This decision doubtless suggested the enactment of the statute just referred to, which provides that "all orders and judgments of the Circuit Courts of this State, made and passed in any cause therein, wherein the said Court shall allow and grant, or shall refuse to allow and grant, any motion for new trials, or any motion to amend the pleadings, or to file new or additional pleadings, or to amend the record of any cause during the Term of the Court in which it was determined, or shall refuse to allow and grant a motion for continuance of the cause, shall and may be assigned for matter and cause of error, upon any writ of error sued out or appeal taken to the Supreme Court; and the said Supreme Court shall hear and determine the matter so assigned for error, in the same manner, and under the like rules and regulations as in other cases."

Thus it will be seen that the Supreme Court is not only invested with authority, but it is made its duty to consider and pass upon matters occurring in the progress of a trial below, which theretofore had been esteemed to be a matter of pure *discretion*, and consequently not subject to be reviewed by the appellate tribunal. In matters of this kind, involving the sifting of evidence, the Appellate Court is required to assume the position of the Judge who presided at the trial of the cause; but it is very manifest that its facilities for arriving at a correct conclusion are greatly deminished by having to rely only upon the report of the evidence as it is set forth in the record. In the opinion delivered in the case just cited, the late Chief Justice Anderson, adopting the language of an eminent jurist, thus forcibly alludes this to disparity: "Every one at all familiar with the incidents of

22

a jury trial, must admit the impossibility of conveying to an appellate tribunal, a perfect transcript of the evidence given to the jury. The tongue of the witness is not the only organ for conveying testimony to the jury; but yet it is only the *words* of a witness that can be transmitted to the reviewing Court, while the story that is told by the manner, by the tone and by the eye of the witness, must be lost to all but those to whom it is told. The testimony of one witness, given with calm self-possession, an erect front, and an unhesitating accent, imports verity as strongly as a record; while the confusion, the hesitation, and the trembling of another, will contradict to the eye, what his faltering tongue has uttered to the ear. Yet the testimony of each will stand alike before the Court of review." This language is as forcible as the sentiment that it inculcates is true, and is a salutary admonition to all appellate tribunals of the caution that should be observed in dealing with matters of evidence. Where the question is, whether *any* evidence has been adduced, upon which the verdict could be founded, the disparity of facilities for determining is not so great, but when it turns upon the *weight* of evidence, involving nice scrutiny, close sifting and accurate balancing, it must be admitted that the Judge who presided at the trial has greatly the advantage. Hence, where the record shows that there has been evidence adduced on both sides, and the application for the new trial is grounded on the preponderance of the same, there must be presented a very flagrant case of injustice to induce this Court to interfere with the ruling of the Court below. This record does not present such a case. There was a large amount of evidence adduced on both sides, applicable to the points in issue between the parties, and without going into a detail of the same, we are not prepared to say that the preponderance was not in favor of the verdict.

Mr. Graham, in his elaborate and masterly treatise, lays

Bridier vs. Yulee.—Opinion of Court.

down the following rules to be observed by Courts in con-
sidering motions for a new trial:

"1st. The verdict must be presumed to be right, until the
contrary appears.

"2d. The verdict should be sustained by the Court, if the
evidence, by any fair construction, will warrant such a finding.

"3d. A Court is not authorized to set aside a verdict,
simply because if they had been on the jury they would
have found a different verdict.

"4th. It is not sufficient that the verdict may possibly be
wrong, but that after giving a proper weight to all the ev-
idence, it cannot be right." 3 Graham on N. T., 1239.

If these are the rules prescribed for the government of the
Judge before whom the trial is conducted, and who usually
has the witness in his presence and under his eye, with how
much more stringency do they address themselves to the ob-
servance of the Appellate Court. In the case of Sanderson
& Co. vs. Hagan & Harrison, this Court did exercise the pre-
rogative of setting aside a verdict and granting a new trial;
but it will be seen by reference to the case, that it was done
upon the ground that there was a total absence of evidence
to support the finding. Justice Pearson, then on the bench,
in delivering the opinion of the Court, remarked: "How-
ever disinclined we are to invade the proper province of the
jury in estimating the force and effect of testimony, this is a
case of too glaring a departure from all legal principle for
the verdict to be permitted to stand. There was no testi-
mony whatever to support the idea that the 'cubic rule'
was the prevailing and customary mode of measurement,"
&c. 7 Fla. Repts., 318.

In the case of the Tallahassee Railroad Co. vs. Macon,
the Court refused to disturb the verdict, and the same Jus-
tice, delivering the opinion of the Court, remarks: "It was
not for the Judge, after the verdict, to measure precisely

the degree of weight which each particular statement of fact must, per force, have on the mind of the jury, and striking a balance between the two, to set aside the verdict, or render judgment as the balance may fall on the one side or on the other. When there is conflicting evidence and the verdict is not manifestly against the weight of evidence, the Court will not interfere to set aside the verdict of a jury." 8 Fla. Repts., 299.

Controlled by the principles thus clearly enunciated, and applying them to the evidence contained in the record, we are constrained to sustain the propriety of the ruling in the Court below, upon the motion for a new trial.

We are not prepared to say that all of the evidence adduced by the Caveator was admissible. Indee d we are rather inclined to the opinion that Miss Striska was incapacitated by interest to be a good witness; but her testimony was so abundantly corroborated and sustained by the other witnesses, that we do not think it had the effect to *mislead* the minds of the jurors, so as to cause them to make a finding which they would not otherwise have made.

In enunciating the conclusion at which we have arrived, it has been deemed unnecessary to array the evidence contained in the record, or to bring it under review in this opinion. It is enough to say, that upon the whole evidence, we think the Judge below might very properly have refused to grant the motion for the new trial.

The second ground assigned in the motion for the new trial, to-wit: that "the verdict of the jury was against the charge of the Court," was not pressed at the hearing; nor do we attach any importance to it, coming to the conclusion that we have.

It is ordered and adjudged that the judgment of the Court below, rendered in this cause, be and the same is *affirmed*, with costs.