EUGENE M. DAVIS, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

Criminal Law—Homicide—Indictment—Expert Witnesses In Insanity—Proceedings *De Lunatico Inquirendo* Not Admissible On Trial Of Party To For Murder—Insanity As Defense—Order of Admittance of Evidence.

1. Under the Laws of Florida the Circuit Court of the county where the fatal blow has been struck has jurisdiction to try the homicide though the death may occur in another county or State.

2. The proceedings and judgment of the County Judge's Court adjudging a party insane under the provisions of Chapter

Davis v. The State of Florida—Syllabus.

4357, Laws of 1895, are not admissible in evidence upon the trial of a criminal charge against the party therein adjudged to be insane, where insanity is relied upon as a defense to such charge.

3. It is the province of the trial court to determine whether or not a witness offered as an expert has such qualifications and special knowledge as to make his opinion in answer to hypothetical questions admissible, and the decision of such trial judge is conclusive upon the question, unless it appears from the evidence to have been erroneous, or to have been founded upon some error in law. The qualifications necessary to enable witnesses to give expert or opinion evidence are prescribed as well as ascertained by rules of law, and if these rules are violated by the trial judge his action is subject to review by the appellate court.

4. The rule laid down in McNaghten's case, 10 Clark & Fin. text, p. 209-211, as to insanity as a defense to crime, adopted and approved. The phase of insanity commonly known as the "irresistible impulse" doctrine is not recognized in Florida, and a charge announcing such doctrine to be a defense in homicide here is erroneous, but is not reversible error in this case, as it tended to favor the accused and not to prejudice him.

5. Sanity being the normal condition of man, when charged with crime, he is presumed to be sane, and the mere fact of the commission of the crime is not in itself sufficient to overcome this presumption.

6. It is in the discretion of the trial court to permit the introduction of evidence by the State, after the conclusion of the defendant's case, though the same may not be strictly in rebuttal, if it was admissible in the main case, and unless such discretion is abused to the detriment of the defendant, it will not be ground of reversal.

Writ of error to the Circuit Court for Suwannee county.

3 S. C.

The facts of the case are stated in the opinion of the court.

*M. F. Horne, J. N. Stripling, C. J. and C. A. Hardee,* for Plaintiff in Error.

*William B. Lamar,* Attorney-General, for the State.

Per Curiam.

The cause was referred by the court to its commissioners for investigation, and they have reported that the judgment ought to be affirmed.

The plaintiff in error was convicted of murder in the second degree in the Circuit Court of Suwannee county, and brings his case to this court by writ of error.

I. The first assignment of error is that "the court erred in denying the motion of the defendant to strike the evidence of C. S. Brown as to the death of the deceased." The witness was a doctor and testified that the death of Dr. W. S. Airth, for whose killing plaintiff in error was on trial was caused by a wound from a pistol shot inflicted by the accused in Suwannee county, Florida; that after the shooting the deceased, then still living, desired to be taken to Atlanta, Georgia, and witness started for Atlanta with him the same night, having put him under the influence of an opiate; that they reached Atlanta next day and took deceased to a sanitarium where he was examined, and it was decided that it was not necessary to attempt an operation, as he could not possible recover; that he died in Atlanta the next day after arriving there, and his body was embalmed and brought back to Live

Oak for burial. The bill of exceptions shows that "defendant's counsel moves the court strike all the evidence of this witness, as to the death of the deceased, upon the ground that the proof does not correspond with the allegations of the indictment, which said motion was overruled by the court, to which ruling defendant by his counsel excepted." The only ground of error asserted in the briefs of counsel for plaintiff in error is that "the allegation that he then and there died is equivalent to an allegation that he died in Suwannee county, Flor'da," and it could not be supported by proof of death in Atlanta, Georgia; but the indictment contains no such allegation. It charges that the mortal wound was inflicted in Suwannee county, Florida, "from which two said mortal wounds the said W. S. Airth did languish and live until the first day of July, A. D. 1900, on which said last mentioned day the said W. S. Airth of and from the two mortal wounds aforesaid did die." The place of the death of the deceased is not stated in the indictment. The Circuit Court of Suwannee county had jurisdiction of the crime, if committed in that county, although consummated in another State. Revised Statutes, Sec. 2360; Roberson v. State, 42 Fla. 212, 28 South. Rep. 427; Smith v. State, 42 Fla. 605, 28 South. Rep. 758.

II. The second assignment of error is that "the court erred in denying and overruling the motion of defendant's counsel to strike out the evidence of Mr. Bevans so far as the same relates to Mrs. Davis on her death-bed, to the effect that she said in the presence of her husband that the medicine that Dr. Airth had giver her was hastening her death." The motion made was to withdraw the testimony of the witness Bevans and not strike it as stated in the assignment. This witness was the father-in-law

of the defendant, and was introduced as a witness on the part of the State. He testified that Dr. Airth, the deceased was the physician who attended Mrs. Davis in her last illness, prior to her death on the twenty-first or twenty-second of November, 1899, and was asked this question: "Did you hear her make any remark prior to her death as to the treatment Dr. Airth was giving her?" To which he replied, "I heard her say that Dr. Airth's medicine was carrying her off," that this remark was made perhaps six or eight hours before her death, and was made more than once. On cross-examination he testified that the accused was present when remarks of this character were made. No objection was made to the question propounded to the witness at the time of his examination, nor until the testimony of the State had closed. The ground of the motion finally made was that the testimony was impertinent. It also appears that counsel for the accused put in evidence substantially the same fact by another witness introduced for the defense. Waiving the point that the objection came too late, and also that by introducing evidence of like import the accused has no right to object, we are of the opinion that the testimony sought to be withdrawn was pertinent. It appeared that the accused in repeated conversations with parties in reference to the death of his wife stated that the deceased had given her medicine which she stated had caused her death. On one occasion, a short time before the shooting of the deceased, in conversation with W. W. Hawkins, the accused stated that deceased had caused the death of his wife and he would kill deceased if he crossed his path, and at the very time of the killing the accused said the deceased had killed his wife and he had killed deceased for it. The fact that the wife of the

accused just before her death stated in his presence that the medicine administered by the deceased was carrying her off was pertinent as tending to show motive for the killing, and there was no error in admitting it on this theory on 'the part of the State.

III. The third assignment of error is that "the court errred in sustaining the objection of the State Attorney to the introduction and reading in evidence the copy of the petition, order appointing a committee, the report of the committee, and the judgment of the County Judge's court based thereon, the same being a copy of all the proceedings in a cause wherein Eugene M. Davis was adjudged insane on June 30th, 1900." The papers mentioned in this assignment of error were offered in evidence by defendant upon the statement of his counsel that they were offered "for the purpose of establishing the fact that he was insane at the time of those proceedings on June 30th." The proceedings were had on the day after the homicide and were based upon the provisions of chapter 4357, act approved May 29, 1895; the sixth section of which provides that the provisions of the act shall not apply to persons charged with criminal offenses and who plead insanity. The court is of opinion that the Circuit Court was right in excluding the proffered evidence for the reason that under the section mentioned proceedings had in pursuance of that act can not be used in evidence upon the trial of a criminal charge against the person adjudged therein to be insane, where insanity is relied upon as a defense upon such trial, as was the case here.

IV. The fourth assignment of error is based upon defendant's objection to a question propounded by the

State to the witness Conner, inquiring whether at the time the proceedings mentioned in the preceding paragraph of this opinion were had, it was not a well known notorious fact, and the talk of the town, that defendant had on the preceding night shot the deceased. The court permitted the question upon the theory that the answer would tend to show that defendant was charged with a criminal offernse at the time the proceedings were instituted, within the meaning of the sixth section of the act above referred to. The fact that defendant did at the time stated in the question and answer, shoot the deceased, was proven by eye witnesses, was not contested at the trial, and there is nowhere in the evidence a suggestion or intimation to the contrary. Defendant could not have been, and was not injured by the testimony adduced in reply to the question objected to, and any error in the ruling here assigned as error is harmless.

V. The sixth, seventh and eighth assignments of error all depend upon the question whether or not the trial court correctly ruled that the witness Dr. T. S. Anderson was not qualified to testify as an expert on the subject of insantiy, and may be considered together. The witness testified that he had been practicing medicine about twenty-one years; that he was a graduate of the State University of Iowa, and a licensed physician in Florida. He testified that he had not made a *particular* study of diseases of the mind, although he had studied that branch at college the same as any other branch of study; that he had only treated a very few patients for insane delusions or insanity, and only for a short time; that with the exception of one he sent them to the asylum, and could not send that one because he died too quick; that he could not say he acquired additional

knowledge on the subject in treating these patients to
that he acquired at college; that he would not have known
how to treat them if he had not gotten it from the
books at college; that he treated them by the knowledge
there obtained; that he never treated any case through
with the exception of that one; that they were only
treated until he could get them away to the asylum;
that he understood we had an asylum for insane patients,
and doctors there to attend them, and when he had one
he got him there as quick as possible, where he belonged;
that he did not consider himself an expert. Upon that
testimony the court ruled that the witness could not tes-
tify as an expert on the subject of insanity. It is the
duty of the trial court to determine whether or not a
witness offered as an expert has such qualifications and
special knowledge as to make his opinions in answer to
hypothetical questions admissible, and the decision of the
trial judge is conclusive upon this question, unless it ap-
pears upon the evidence to have been erroneous, or to have
been founded upon some error in law. Perkins v. Stickney,
132 Mass. 217. While it appears from the evidence re-
specting the qualifications of this witness that he was and
had been for about twenty-one years a practicing physic-
ian and surgeon, a graduate of the State University of
Iowa, and licensed to practice his profession in this
State, and had at college made a study of diseases of the
mind, it does not appear how long or to what extent his
studies upon that subject were pursued, nor that since
leaving college he had devoted any attention to or pur-
sued the study of the subject to any extent, and as the
judge had the witness before him and saw the evident
reluctance manifested by the witness to being regarded as
an expert, caused no doubt by a conscientious belief on his

part that his studies upon the subject were too limited
and desultory to entitle him to be regarded as an ex-
pert, we can not say that the judge could not legally
find from the testimony that the witness was not quali-
fied to give opinions upon the questions of insanity based
upon the strictly hypothetical questions sought to be put
to him.    McEwen v. Biglow, 40 Mich. 215; Abbott .v.
Commonwealth, 107 Ky. 624; 55 S. W. Rep. 196; Common-
wealth v. Rich, 14 Gray 335; Russell v. State, 53 Miss.
367; Reed v. State, 62 Miss. 405; Lawson on Expert &
Opinion Evidence, p. 125 *et seq.*   Some courts hold that
the trial judge has a discretion not subject to review
in passing upon the facts relating to the qualifications
of a witness offered as an expert, but a discretion of this
nature can not be admitted to exist in the jurisprudence
of this State.   The qualifications necessary to enable wit-
nesses to testify as experts are prescribed as well as as-
certained by rules of law, and if these rules are violated
by the trial judge his action will be erroneous and sub-
ject to review.   The question whether a particular wit-
ness possesses the necessary legal qualifications of an
expert is a question of fact to be determined by the trial
judge from testimony bearing upon that question, and if
he clearly errs in his decision upon the question of fact,
his decision will likewise be erroneous and subject to re-
view.   Of course his decision upon such question of fact
will be entitled to weight in the appellate court, because
of the superior advantages possessed by the trial judge
who hears the testimony and observes the witnesses, and
his decisions will not be pronounced erroneous unless they
are clearly so.   He must decide the question of fact like
he would other questions of fact arising for his decision
upon the trial, and his decision will be given due weight,

but if he has erred in matter of law, or if his decision upon the evidence is clearly erroneous it is subject to review and control by an appellate court. The ruling of the trial judge in this case did not preclude the witness Dr. Anderson from testifying to facts and circumstances known to him in relation to the defendant and expressing his opinion as to the sanity of the latter, based thereon, as recognized in Armstrong v. State, 30 Fla. 170, 11 South. Rep. 618, for the witness was permitted to so testify, and the objections embraced in these arguments of error relate solely to hypothetical questions put to the witness as an expert on insanity. We can not see that the rulings were clearly erroneous, and these assignments of error are therefore not well taken.

VI. The fifth assignment of error is as follows: "The court erred in using the following language in the hearing of the jury, towit: The court having ruled that this is not an expert witness, Mr. Strippling, I want this matter of examination of the witness to stop. He can not answer that question unless he is an expert, and I have said that the question ought to have been objected to by the State Attorney; that I do not want to appear as prosecuting in the matter, but that it has been gone over and I want it to stop." Previous to this remark the court had ruled that the witness Dr. Anderson was not an expert and that questions prodounded to him on the theory that the witness was an expert could not be answered. Other questions along the same line were propounded which the court excluded, and thereafter another question of the same nature was asked, which elicited the remarks from the court embraced in this assignment of error. It is proper for the court, after having distinctly ruled that a witness was not qualified as an expert, to insist that the

time of the court shall not be consumed in propounding questions to such witness on the theory that he was an expert. We see nothing in the remarks injurious to any right of the defendant.

VII. The ninth assignment of error is not argued, and is, therefore, abandoned.

VIII. The tenth assignment of error relates to a portion of the charge to the jury on the effect of intoxicants on the mind of an accused when committing a homicide. The objections urged to this portion of the charge are, first, that there was no basis in the evidence for a charge on the subject; second, that the court assumed in the charge that the accused was intoxicated, or drinking; and, third, that the rule stated was incorrect and also tended to deprive the accused of the defense of insanity, the only one upon which he relied. It is true that the defense of insanity is the only one, so far as disclosed by the evidence, relied on by the accused, but there was sufficient evidence of the use of intoxicants by the accused to authorize the court to instruct the jury on the subject. The fact alone that the accused did not request or desire any instruction thereon did not render the charge erroneous. Garcia v. State, 34 Fla. 311, 16 South. Rep. 223. The court did not assume in the charge that the accused was drinking or intoxicated, nor does the charge exclude from the jury the defense of insanity relied upon by the accused, which defense was fully covered and distinctly submitted to the jury in other portions of the instructions given. The only other contention is that the instruction did not correctly state the rule on the subject. If the defense of insanity relied on was not maintainable under the proof, the accused was clearly guilty of murder in the

first degree, unless it be that by the use of intoxicants he was unable to form a premeditated design to take the life of the deceased. The undisputed evidence is that on the evening of the homicide the accused sought the deceased at his home and not finding him there went to a drug store and enquired for him, saying he wanted to see him. Being informed that he was out, he said he would wait for him, which he did. After a short time the deceased walked in the drug store at a back door, and after greeting the accused passed behind a counter and walked towards a cigar case in front. The accused walked in the same direction on the outside of the counter, both being engaged quietly in a friendly conversation, audible to other persons present. The deceased reached the cigar case and got out a cigar, and that time the accused shot him with a pistol. After the firing by accused of several shots in quick succession, the deceased crouched behind the counter and the accused stepped towards the door, turned back, reached over or around the counter and fired again, and as he walked out of the store said "he killed my wife, and G——d d——n, I will kill him." There was also testimony tending to show that the accused was drinking intoxicating liquors a short time before the killing, and to some extent under its influence, but it did not go to the extent of indicating fixed or temporary insanity on his part. The defense was insanity, and this of course involved the mental capacity of the accused to distinguish between right and wrong, and to comprehend the nature of his act in taking life. The court instructed the jury as to the effects of intoxicants on the mind in connection with the defense of insanity as a result of a diseased mind, and the most favorable view that the jury could have taken of the testimony in reference

to the use of intoxicants was that the accused did not have capacity by reason thereof to form a premeditated design to take life, and hence could not be guilty of murder in the first degree. The court instructed the jury that if the accused at the time of the homicide was so much under the effects of intoxicants as to be unable to form a premeditated design to effect the death of the deceased, then he could not be convicted of murder in the first degree nor manslaughter; but if the evidence satisfied them beyond a reasonable doubt that at the time of the killing the accused knew he was doing wrong, and then had will power sufficient to enable him to resist the temptation to do the wrongful act, and under the influence of passion and a spirit of revenge or injury, either real or imaginary, slew the deceased he could be convicted of murder in the second degree. Aside from the defense of insanity, which the jury rejected, if the accused was not guilty of murder in the first degree by reason of his incapacity resulting from the use of intoxicants to form a premeditated design to take life, he was clearly guilty, under the testimony, of murder in the second degree. The latter part of the charge, though not stating the conditions of the second degree of murder as defined by the statute, was not erroneous as appled to the facts of the case. The court had already defined the offense in the language of the statute in a prior part of the charge. We think there is no tenable ground for reversing the judgment in the particulars of which complaint is made.

IX. The eleventh assignment of error is predicated upon the following charge to the jury: "The important question for you to decide is, was the accused, at the time the fatal shot or shots were fired, laboring under an in-

sane delusion or insanity to such an extent as not to know that he was violating the law and doing wrong, it not being sufficient that he was insane before or after that time. Where insanity of a permanent type or continuing nature or possessed of the characteristic of a habitual or confirmed disorder of the mind is shown to have existed prior to the commission of the fact, it is presumed to continue until the presumption is overcome by testimony to the contrary. But this presumption does not apply to spasmodic mania, or to disorders of the mind produced by the violence of disease or any form of temporary insanity." The main grounds of objection urged to the charge is that it adopts as a test of responsibility for crime the mental ability to perceive the wrongfulness of the act, when it is asserted the correct rule is that enunciated by some modern authorities in this country that mere capacity to distinguish between right and wrong as applied to the particular act is not a legal test of responsibility for crime, but that such capacity may be co-existent with an absence of ability to resist the impulse to commit the wrongful act, in which event there will be no criminal responsibility.

The nineteenth assignment of error relates to a clause of the charge immediately preceding the charge set out above, and both clauses together constitute a single paragraph in the charge, intended to be construed as an entirety, so that these assignments of error may be considered together. The clause embraced in the nineteenth assignment reads as follows: "To justify an acquital or verdict of not guilty, it is not sufficient to show that the defendant was insane before or after, or both before and after, the time of the killing, although such evidence is admitted to enable you better to decide on the probable condition

of the mind at that time." So far as the first sentence of the charge is concerned, which is objected to under the nineteenth assignment of error, there is no merit in the objection. The entire paragraph was intended to, and did, announce the rule that the jury must find the defendant to have been insane when the fatal shots were fired, in order to justify an acquittal on the ground of insanity. It was not sufficient that he was insane before or after, or both before and after, the firing of the fatal shots, but he must be insane at that particular moment If, however, insanity of a permanent type or continuing nature, or characterized by a habitual and confirmed disorder of the mind, not temporary or occasional, were shown to have existed prior to the commission of the act, it would be presume i t.· continue up to the commission of the act, unless the presumption were overcome by competent testimony. Armstrong v. State, 30 Fla. 170, 11 South. Rep. 618.

Recurring now to the eleventh assignment of error, it is appearant from the entire instruction that the object of this instruction was not to give a comprehensive or authoratative definition of the test of mental responsibility, but merely to define the period at which mental irresponsibility must be shown in order to warrant an acquittal on that ground, and the charge must, therefore, be considered in connection with the other charges given on the subject in determining whether or not it was objectionable on the ground urged under this assignment of error. The entire charge of the court should be considered as a whole in determining the propriety of an exception to any portion thereof, and if the charge as a whole is correct there is no ground of exception. Clifton v. State, 26 Fla. 523, 7 South Rep. 863. Exceptions to other

charges, however, directly present the question as to the proper test in determining mental irresponsibility, and the question may be considered under this assignment of error. McNaughten's case, referred to in Copeland v. State, 41 Fla. 320. 26 South. Rep. 319, is the leading English authorities on the subject. In that case Chief-Justice Tindal in his charge to the jury said that "the question to be determined is, whether at the time the act in question was committed, the prisoner had or had not the use of his understanding, so as to know that he was doing a wrong or wicked act. If the jurors should be of opinion that the prisoner was not sensible at the time he committed it, that he was violating the laws both of God and of man, that he would be entittled to a verdict in his favor; but if, on the contrary, they were of opinion that when he committed the act he was in a sound state of mind, then their verdict must be against him." There was a verdict of "not guilty, on the ground of insanity," and the case, which was tried in 1843, afterwards became the subject of debate in the House of Lords, whereupon it was determined to take the opinions of the judges on the law governing such cases. Two of the question propounded to the judges were as follows: "What are the proper questions to be submitted to the jury, where a person alleged to be afflicted with insane delusions respecting one or more particular subjects or persons is charged with the commission of a crime (murder for example), and insanity is set up as a defense?" And "in what terms ought the question to be left to the jury as to the prisoner's state of mind at the time when the act was committed?" In their response the judges say: "As these two questions appear to us to be more conveniently answered together, we have to submit our opinion to be,

that the jurors ought to be told in all cases that a person charged with crime will be regarded as sane, unless at the time of the committing of the act, the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong. The mode of putting the latter part of the question to the jury on these occassions has generally been, whether the accused at the time of doing the act knew the difference between right and wrong; which mode, though rarely, if ever, leading to any mistake with the jury, is not, as we conceive, so accurate when put generally in the abstract, as when put with reference to the party's knowledge of right and wrong in respect to the very act with which he is charged. If the question were to be put as to the knowledge of the accused solely and exclusively with reference to the law of the land, it might tend to confound the jury, by inducing them to believe that an actual knowledge of the law of the land was essential in order to lead to a conviction; whereas, the law is administered upon the principle that every one must be taken conclusively to know it, without proof that he does know it. *If the accused was conscious that the act was one which he ought not to do, and if that act was at the same time contrary to the law of the land, he is punishable; and the usual course, therefore, has been to leave the question to the jury, whether the party accused had a sufficient degree of reason to know that he was doing an act that was wrong;* and this course, we think, is correct, accompanied with such observations and explanations as the circumstances of each particular case may require." 10 Clark & F. 200, text 209-211. Section 2369 of

Davis v The State of Florida—Opinion of Court.

our Revised Statutes provides that "the common law of England in relation to crime, except so far as the same relates to modes and degrees of punishment, shall be of full force in the State where there is no existing provision by statute on the subject." There is no statute defining what degree of irresponsibility shall constitute incapacity to commit a criminal act and hence the common law rule must govern. The rule anounced in McNaghten's Case is substantially the rule laid down in all modern English authorities, and the weight of authority in this country supports the English rule. People v. Hoin, 62 Cal. 120; People v. Owens, 123 Cal. 482, 56 Pac. Rep. 251; Mackin v. State, 59 N. J. L. 495, 36 Atl. Rep. 1040; Genz v. State, 59 N. J. L. 488, 37 Atl Rep. 69; State v. Miller, 111 Mo. 542, 20 S. W. Rep. 243; State v. Pegels, 92 Mo. 300, 4 S. W. Rep. 931; Ford v. State, 73 Miss. 734, 19 South. Rep. 665; Cunningham v. State, 56 Miss. 269, S. C. 21 Am. Rep. 360; State v. McIntosh, 39 S. C. 97, 17 S. E. Rep. 446; State v. Alexander, 30 S. C. 74, 8 S E. Rep. 440; Wilcox v. State, 94 Tenn. 106, text 118 *et seq.*, 28 S. W. Rep. 312; State v. Murray, 11 Oregon, 413, 5, Pac. Rep. 55; Burgo v. State 26 Neb. 639, 42 N. W. Rep. 701; Flanagan v. People, 52 N. Y. 467, S. C. 11 Am. Rep. 731; Walker v. People, 26 Hun, 67; State v. Mowry, 37 Kan. 369, 15 Pac. Rep. 282; State v. Nixon, 32 Kan. 205, 4 Pac. Rep. 159; State v. Brandon, 8 Jones (N. C.) 463; Spencer v. State, 69 Md. 28, 13 Atl. Rep. 809; United States v. Young, 25 Fed. Rep. 710; United States v. Holmes, 1 Cliff. 98; 3 Witthaus & Becker on Med. Juris. 446 *et seq.* Two cases in accord with the views here expressed and reviewing a large number of the authorities are State v. Harri- 4 S. C.

son, 36 West Va. 729, 15 S. E. Rep. 982, 18 L. R. A. 224, and State v. Knight, 95 Me. 467. A leading case holding the contrary view is Parsons v. State, 81 Ala. 577, 2 South. Rep. 854. The policy of introducing such an innovation on the common law rule does not seem to have commended itself to legislative assemblies in England or in this country. An unsuccessful attempt seems to have been made to enact the "irrestistible impulse" doctrine in England, and it has been ignored in adopting the penal codes of several States here. People v. Taylor, 138 N. Y. 398, 34 N. E. Rep. 275; State v. Scott, 41 Minn. 365, 43 N. W. Rep. 62; Maas v. Territory, 10 Okl. 714. From what has been said it follows that there was no eror in the charge of which the plaintiff in eror can complain.

X. The twelfth assignment of error alleges error in giving a charge to the jury as follows: "In the case at bar the defendant insists that he is not guilty, because he was laboring under homicidal insanity when fatal shots were fired, of insanity or partial insanity or inability to form a design to take the life of the deceased, and is not responsible for the acts because he was incapable of knowing right from wrong." The succeeding part of the same paragraph in the charge reads as follows: "You are instructed that in order to constitute the crime of murder the slayer must have a responsible and sane mind; an irresponsible insane man can no more commit murder than a sane man can do so without killing; his condition of mind can not be separated from the act. If he is laboring under a disease of the mental faculties to such an extent that he does not know what he is doing, or does not know that it is wrong, then he cannot be held accountable for a homicidal committed while laboring under such disease of his mental faculties to that extent." There is no exception

to the latter part of the charge, and the entire charge taken together furnishes no just ground of exception to the plaintiff in error.

XI. The thirteenth assignment of error is as follows: "The court erred in charging the jury as follows: If, however, there arises from the evidence coming from any quarter, a reasonable doubt of the sanity of the accused, the presumption of the law is overcome, and the accused is entitled to an acquittal, unless the State, by evidence meets and overcomes this reasonable doubt arising in his favor by testimony to the contrary." Objection is taken to the use of the words "unless the State, by evidence meets and overcomes this reasonable doubt arising in his favor by testimony to the contrary." There is no merit in the objection. The clause objected to under this assignment of error has been expressly approved by this court. Armstrong v. State, *supra*.

XII. The fourteenth asignment of error alleges error in the following charge: "The true test of criminal responsibility, when the defense of insanity is interposed, is whether the accused had sufficient use of his reason to understand the nature and consequences of the act with which he is charged, and to understand that it was wrong for him to commit it; that if this was the fact, he was criminally responsible for it, whatever peculiarity may be shown about him in other respects. Whereas, if his reason was so defective, in consequence of mental disorder, that he could not understand what he was doing, or that what he was doing was wrong, he ought to be treated as an irresponsible person and acquitted." The only ground of objection urged to the charge is that it adopts as a test of responsibility the ability to distinguish between right and wrong in the commission of the act, and this asign-

ment of error, for reasons stated in paragraph IX of this objections, is without merit.

XIII. The fifteenth assignment is that the court erred in charging as follows: "Now, as the law resumes every one sane and responsible, the question is, what is there in this case to show to the contrary as to this defendant's mental condition on the twenty-ninth day of June last? you are instructed that you are not warranted as a jury in inferring that a man is insane from the mere fact alone of his committing a crime, or from the enormity of the crime or from the mere absence of adequate motives for its commission." There was no error in this charge. Sanity is the normal condition, and a party charged with the commission of crime is presumed to be sane. The mere fact of the commission of the crime is not in itself sufficient to overcome this presumption. Armstrong v. State, *supra;* Copeland v. State, *supra;* Kerr on Homicide, section 477.

XIV. The sixteenth assignment of error is only insisted upon in connection with the claim that the court erred in charging as to the legal test of mental responsibility in accordance with the law announced in instructions already considered, as to which it has been shown there was no error.

XV. The seventeenth assignment of error is that the court erred in charging the jury as follows: "If a man's nerves were so iritated by a baby's crying that he became vexed and instantly killed it, his act would be murder; it would not be less murder if the same irritation and corresponding desire was produced by some internal disease. The great object of criminal law is to induce people to control their impulses, and there is no reason why, if they can, they should not control their insane as well as

their sane impulses. Whether or not in the case at bar there were such insane impulses, and if there were, whether or not they were irresistible or could not have been resisted, you are to decide from the evidence." The court, in addition to the instructions already considered as to the legal test of responsibility for crime claimed to have been committed by an accused while insane, instructed them upon the subject of irrestistible impulse, telling them that though defendant at the time of committing the act had sufficient mental capacity to distinguish between right and wrong with respect to the act he was committing, and knew that it was wrong to do the act, yet if by reason of mental disease the defendant had not sufficient will power to enable him to refrain from doing the act, he would not be guilty, and in the course of his charge upon this subject of irresistible impulse he used the illustration mentioned in the first clause of this instruction, which is the only clause claimed to be erroneous in the briefs. As we have stated the "irresistable impulse" doctrine does not obtain in this State, and such impulse is not recognized and affecting responsibility for a crime committed by one who has sufficient mental capacity to distinguish between right and wrong with respect to the particular act, and who knows that he is doing wrong when he commits it; but of course the defendant does not and can not complain that the irresistible impulse theory was submitted to the jury, for it was entirely favorable to him. We can see no objection to the illustration used by the judge in the instruction we are now considering, for it is entirely correct when applied to causes of partial insanity as was done in this case, particularly when used in connection with and immediately proceeding the language used in the same paragraph as set out above.

XVI. The eighteenth assignment of error alleges error in the following charge: "If a person under an insane delusion as to existing facts commits an offense in consequence thereof, his guilt or innocence depends on the nature of the declusion. If such person labors under partial delusions only, and is not in other respects insane, he must be considered in the same situation as to responsibility as if the facts with respect to which the delusion exists, were real. For example, if under the influence of his delusion he supposes another man to be in the act of taking his life, and he kills that man as he supposes in self-defense, then he would be exempt from punishment. But if his delusion was that the deceased had inflicted a serious injury to his character or property, or to his happiness in any way, and he killed him in revenge for such supposed or real injury, he would be liable to punishment, if he had mind to enable him to distinguish right from wrong at the time the homicide occured." The plaintiff in error had no proper ground for exception to this charge. The charge, without the qualification contained in the last clause, is almost in the identical language used by the judges in answer to the fourth question propounded to them in McNaughten's case, *supra*.

XVII. The twentieth assignment of error alleges error in the following remarks made by the court to the jury at the conclusion of the charge: "Inasmuch as the present term of this court expires at 12 o'clock to-night, I deem it my duty to instruct you that (if) after due and thorough deliberation on a cause a jury shall return into court without having agreed upon a verdict, the court may explain to them anew the law applicable to the case, and may send them out again for further deliberation; but

if they shall return a second time without having agreed upon a verdict, they shall not be sent out again without their own consent, unless they shall ask for some further explanation of the law.   I mention these facts that you proceed with judicious activity in the consideration of the evidence, as your verdict to be effective or valid must be presented in court during this term which ends, as already stated, at twelve o'clock to-night." The bill of exceptions shows that the case was submitted to the jury at 6 o'clock P. M., and that they returned their verdict at 10:30 o'clock P. M. on the day the charge of the court was given them, and as there is nothing in the record showing the contrary we must assume that the term of the court expired at the time stated in the instruction objected to. It was proper for the court to give the charge under the circumstances, and it had no tendency, that we can see, to influence the jury to render a verdict without due consideration, or to withdraw their minds from the importance of their duties and the responsibilities developing upon them as jurors. Sigsbee v. State, 43 Fla. 524; 30 South. Rep. 816; Myers v. State, 43 Fla. 500; 31 South. Rep. 275.

XVIII. The twenty-first assignment of error is that "the court erred is not sustaining the motion of the defendant to strike the evidence of W. W. Hawkins, given in rebuttal, about a threat alleged to have been made by the defnedant." The testimony, which was the subject of the motion, was to the effect that on the seventeenth of June, twelve days prior to the homicide, the witness was in company with the defendant, and the latter in course of a conversation remarked, "boys, I have no wife, but I would have had one if Dr. Airth had not killed or poisoned her," or words to that effect; and further "he said he

believed that he had killed her, and always would believe it, and the first time he crossed his path, he would kill him." There was no objection to the question in response to which the testimony was elicited, but the bill of exceptions shows that after the admission of the testimony "defendant moved the court to strike out and withdraw from the jury the evidence of W. W. Hawkins, given in rebuttal, and because the defendant has no opportunity to disprove it." The assignment of error is without merit. It is within the discretion of the trial court to permit a witness for the State, after the conclusion of the defendant's case, to testify to matters not strictly in rebuttal, but which might have been introduced as part of the main case, and it does not appear that there was any abuse of that discretion. Anthony v. State, decided at this term. If the defendant had desired to contradict or impeach the testimony of the witness, he should have offered evidence for that purpose, which he could properly have done.

XIX. The twenty-second and only remaining assignment of error is that the court erred in denying defendant's motion for new trial. It is only argued on the ground that the evidence fails to sustain the verdict, and that ground is untenable. The only questions for the jury to determine were whether or not the defendant was insane, and, if not, the degree of his offense. Upon these questions there was conflicting testimony, and it was the peculiar province of the jury to settle it. The jury did so, and there is ample testimony to support the verdict.

There is no error disclosed in the record prejudicial to the plaintiff in error, and the judgment of the court below should be affirmed, and it is so ordered.