CHARLES L. SCOTT, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

1. Where in a criminal prosecution the sanity of the defendant is in issue, non-expert witnesses cannot express a general opinion as to sanity, nor can they give an opinion independent of the facts and circumstances within their own knowledge; but they can detail the facts known to them which show insanity, and thereupon express an opinion as to the sanity of the person whose mental condition is being investigated. The value of such testimony will

depend largely upon the opportunities of the witnesses for correct observation of the appearances and conduct of the person whose mind is claimed to be unsound, as well as the character of such appearances and conduct.

2. Where in a prosecution for murder, the sanity of the defendant at the time of the commission of the alleged crime is a material issue, and non expert witnesses have testified as to facts known to them and as to their opinions as to the sanity of the defendant based on such facts, and charges are given to the jury that such evidence is admissible, "but at the same time you should bear in mind that such evidence is merely for your enlightenment and consideration" and that "you are not bound even to believe the facts and circumstances as sworn to, but you may, if you think they are true; but as to the inferences and deductions and opinions drawn by the witness from the facts sworn to, that is a matter of their belief and opinion, and you are not bound thereby, but should draw your own deductions and conclusions and opinions from the facts and circumstances as related by the witnesses should you believe them," such charges in the connection used in this case may fairly be regarded as bearing upon the probative force of the opinions testified to; and such charges conflict with the rule that "the value of such testimony will depend largely upon the opportunities of the witnesses for correct observation of the appearances and conduct of the person whose mind is claimed to be unsound, as well as the character of such appearances and conduct."

3. A charge that: "Moral depravity or moral insanity, so called, which results, not from any disease of the mind, but from a perverted condition of the moral system, where the person is mentally sane, does not exempt from responsibility for crime committed under its influence," should not be given in a criminal prosecution where there is not evidence of "moral depravity or moral insanity," or of a "depraved condition of the moral system" of the accused, and such language is not essential or appropriate to a definition of insanity as it is in issue in the case.

4. The word "spontaneously" is not used in the definitions of reasonable doubt that have been approved by this court.

5. Where material errors and inaccuracies in charges given are not cured by other charges given, and it does not appear from the whole record that the jury could not reasonably have been misled by such errors and inaccuracies, a judgment of conviction of murder in the first degree will be reversed.

6. Where the insanity of the defendant is a real issue in a criminal prosecution, the court should charge the jury that if the defendant is acquitted on the ground of insanity, they should so state in the verdict in order that appropriate action may be taken by the court under section 3992 of the General Statutes of 1906.

SHACKLEFORD AND COCKRELL, J. J., dissent.

Writ of error to the Circuit Court for Bervard County.

The facts in the case are stated in the opinion of the court.

*Geo. M. & Rufus M. Robbins, W. A. Blount* and *R. W. Davis,* for Plaintiff in Error;

*Park Trammell,* Attorney General, and *C. O. Andrews,* for the State.

WHITFIELD, C. J.—Scott was convicted of murder in the first degree and took writ of error. At the trial the sanity of the accused at the time of the homicide was a material issue, and the court was liberal in admitting evidence in behalf of the defendant.

It is contended that alleged errors in charges given misled the jury. A number of non-expert witnesses ex-

pressed their opinions as to the defendant's sanity based upon facts and circumstances testified to by them.

The court charged the jury that: "In this case the defendant has put in issue the question of his sanity or insanity at the time of the commission of the alleged crime. The court instructs you that you are the judges of the defendant's sanity or insanity ·at the time, according to the facts and circumstances of the case as they are in evidence before you. Non-expert witnesses who know the defendant and are conversant with his acts and doings are allowed to give their opinions, based upon their knowledge of the facts and circumstances of the case, as to the defendant's mental condition; but at the same time you should bear in mind that such evidence is merely for your enlightenment and consideration and you are the sole judges, yourselves, of all the facts and circumstances and evidence in the case as to the defendant's sanity or insanity, at the time of the commission of the alleged offense."

In Armstrong v. State, 30 Fla. 170, 11 South. Rep. 618, 17 L. R. A. 484, this court held that: "Non-expert witnesses cannot express a general opinion as to sanity, nor can they give an opinion independent of the facts and circumstances within their own knowledge; but they can detail the facts known to them which show insanity, and thereupon express opinion as to the sanity of the person whose mental condition is being investigated. The value of such testimony will depend largely upon the opportunities of the witnesses· for correct observation of the appearances and conduct. of the person whose mind is claimed to be unsound, as well as the character of such appearances and conduct."

The following language is contained in the quoted charge: "but at the same time ·you should bear in mind

that such evidence is merely for your enlightenement and consideration," in the connection in which it is used, may fairly be construed to mean that the opinions of non-expert witnesses as to the sanity of the accused, though based on facts known to the witnesses, have little if any probative force, which is a charge on the weight of the evidence in violation of the statutory provision that the judge "shall charge the jury only upon the law of the case." In addition to this, the charge is not in accord with the rule announced in the Armstrong case that the opinions of non-expert witnesses based on facts known to them and testified to by them, together with the facts so testified to, are evidence which the jury should consider; and that the probative force or "the value of such testimony (both as to opinions and the facts) will depend largely upon the opportunities of the witness for correct observation of the appearances and conduct of the" alleged insane person. Similar defects appear in the charge numbered 20 that was given as follows:

"20. The jury in considering the evidence in the case will bear in mind that there is a distinction between facts and circumstances sworn to, and inferences and opinions drawn therefrom, you are not bound even to believe the facts and circumstances as sworn to, but you may, if you think they are true, but as to the inferences and deductions and opinions drawn by the witnesses from the facts sworn to that is a matter of their belief and opinion, and you are not bound thereby, but should draw your own deductions and conclusions and opinions from the facts and circumstances as related by the witness should you believe them."

The following charge was given: "Moral depravity or moral insanity, so called, which results, not from any disease of the mind, but from a perverted condition of

the moral system, where the person is mentally sane, does not exempt from responsibility for crime committed under its influence." There is no evidence in the record of "moral depravity or moral insanity," or of a "perverted condition of the moral system" of the accused, and the language of this charge does not appear to have been essential or appropriate to a definition of insanity as it was in issue in this case.

A charge defining a reasonable doubt contains this: "it is such a doubt as would spontaneously arise from the evidence or lack of evidence." The use of the "spontaneously" may not be harmful error in every case, but the word is not used in the definitions of reasonable doubt that have been approved by this court. See Lovett v. State, 30 Fla. 142, 11 South. Rep. 550, 17 L. R. A. 705.

On the record in this case it cannot be said that the errors and inaccuracies pointed out in the quoted charges, were cured by other charges given or that they could not reasonably have misled the jury.

Where the insanity of the defendant is a real issue in a criminal prosecution, the court should charge the jury that if the defendant is acquitted on the ground of insanity, they should so state in the verdict in order that appropriate action may be taken by the court under section 3992 of the General Statutes of 1906. See Johnson v. State, 57 Fla. 18, 49 South. Rep. 40.

The judgment is reversed and a new trial awarded.

TAYLOR AND HOCKER, J. J., concur.

SHACKLEFORD, J., dissenting.

I deeply regret my inability to concur in the opinion which has been written in this case by the Chief Justice

and concurred in by a majority of the court. I might well say in the words which Robert Browning puts into the mouth of the old Pope, in that great masterpiece, "The Ring and the Book," in affirming the death sentence which had been pronounced by the law court on Guido, God has meted out to me "So much of judging faculty, no more." I have conscientiously used this judging faculty to the utmost of my ability and herewith submit the conclusion which I have reached embodied in the opinion which I prepared as the opinion of the court, but in which a majority of the court have announced that they canot concur. Of course, I have had to make such verbal changes therein as are requisite to a dissenting opinion.

Charles L. Scott was tried and convicted of murder in the first degree and sentenced to death. From this judgment and sentence he seeks relief here by writ of error. Thirteen errors are assigned, though some of them are so lightly insisted upon that, under our established practice, they might well be deemed to have been waived or abandoned, but, as it is a case in which the death sentence has been pronounced, *in favorem vitate,* I have given every assignment my careful consideration. Not only have I subjected the transcript of the record to a close and critical examination, but I have read with care the briefs of the respective counsel, examined the different authorities cited therein and listened attentively to the able and ingenious oral arguments with which we were favored. Having availed myself of all these helps, the duty, with all the accompanying responsibility, devolves upon me of passing upon the judgment rendered by the trial court.

The defendant was indicted and tried for the murder of Lars Jorgensen. No useful purpose could be subserved

by setting out the evidence adduced at the trial concerning the deplorable tragedy, even in a condensed form. There were no eye-witnesses to the killing, the evidence being circumstantial, but, while this is true, such cogent and connecting circumstances were proven that I am of opinion that the jurors, acting as reasonable men, could have found from such evidence and reached the conclusion that the crime with which the defendant stood charged before them had been established beyond a reasonable doubt. This is the test which we have adopted and applied to a verdict in passing upon a assignment based upon the overruling of the motion for a new trial, which questions the sufficiency of the evidence to support the verdict. See Andrew v. State, 62 Fla. 10, 56 South. Rep. 681, wherein prior decisions of this court will be found cited. While it is not directly admitted before us that the deceased came to his death at the hands of the defendant, yet there is no strenuous insistance that the evidence adduced does not establish such homicide. The defense relief upon and earnestly and ably urged before us is the insanity or irresponsibility of the defendant, and to that phase of the case I shall now turn my attention.

After the State had rested its case, several witnesses were introduced on behalf of the defendant from Abington, Va., where the defendant had resided for some years before coming to Florida, something over a year previous to the trial, and also several witnesses were introduced who had known the defendant since he had resided in Florida. By these different witnesses it was sought to establish the insanity or mental irresponsibility of the defendant. Again I shall refrain from attempting to give a synopsis of this testimony, which covers a number of typewritten pages. It may be conceded that such

testimony tended to establish, if it did not fully do so, the good character of the defendant for "peaceableness, honesty, good temper" from his early boyhood down to the time of the tragedy. It may be further conceded that such testimony tended to establish, and perhaps did so establish, that the defendant had a number of peculiar traits and characteristics, all of which are detailed, that he was more or less abnormal, lazy, indolent, shiftless, disinclined to do any work, averse to society and social gatherings or functions, and rather fond of solitude. It must be further conceded that these witnesses, after detailing the facts and circumstances connected therewith, including the opportunities which had been afforded them for making observations and reaching conclusions, testified more or less strongly and directly that in their opinion the defendant was insane or mentally irresponsible and incapable of distinguishing between right and wrong by the use of his reasoning faculties. It may be that the force of the testimony of these witnesses, or some of them, given on their direct examination, was more or less weakened by the vigorous cross-examination to which they are subjected. It should be observed that none of these witnesses were physicians or medical experts. We have had occasion several times to consider and discuss the question of insanity, when the same is relied upon as a defense in a criminal prosecution. See Hodge v. State, 26 Fla. 11, 7 South. Rep. 593; Armstrong v. State, 27 Fla. 366, 9 South. Rep. 1, 26 Amer. St. Rep. 72; Armstrong v. State, 30 Fla. 170, 11 South. Rep. 618, 17 L. R. A. 484; Brown v. State, 40 Fla. 459, 25 South. Rep. 63; Davis v. State, 44 Fla. 32, 32 South. Rep. 822; Williams v. State, 45 Fla. 128, 34 South. Rep. 279; Leaptrot v. State, 51 Fla. 57, 40 South. Rep. 616; Johnson v. State, 57 Fla. 18, 49 South. Rep. 40. In these

cases we have laid down certain general rules for guiding principles. Among them, we would first call attention to the following principle: "Sanity being the normal and usual condition of mankind, the law presumes that every individual is in that condition, hence the State in a criminal prosecution may rest upon such presumption without other proof relative thereto. The fact of sanity is presumed to exist *prima facie,* and whoever denies such fact or interposes a defense based upon its untruth, must prove it. The burden of overthrowing the presumption of sanity is upon the person who alleges insanity." Brown v. State, *supra.* This but announces the rule laid down in the prior and followed in the subsequent decisions of this court. While such burden is properly placed upon one who has committed a crime and seeks to escape the legal consequences thereof upon the ground that he was insane at the time of such act and therefore not mentally or legally responsible therefor, it is advisable to inquire into and determine the nature and extend of the burden thus imposed. We have announced the following upon this point: "Where the defense of insanity is relied upon, the rule in force in this State is, that if the evidence introduced tends to rebut the presumption of sanity on the part of the accused, and the jury entertain a reasonable doubt after due consideration of all the evidence, as to his sanity, it is their duty to acquit." Armstrong v. State, *supra.* In other words, if the evidence introduced by the State in a criminal prosecution does not of itself raise a reasonable doubt as to the sanity of the accused at the time when the crime was committed, then the law casts the burden upon the defendant of introducing the evidence which would raise, or at least tend to raise, in the minds of the jury a reasonable doubt as to his sanity when the

offense was committed. If such evidence is so introduced by the defendant and a reasonable doubt as to his sanity is thereby raised or engendered and the State introduces on evidence in rebuttal sufficient to overcome and remove such reasonable doubt so raised by the evidence of the defendant, then it is the duty of the jury to acquit. Johnson v. State, *supra.* If, then, the defendant in the instant case succeeded in meeting this burden by his evidence and in producing a reasonable doubt in the minds of the jury as to his sanity at the time of the homicide, which may be conceded for the sake of argument, though we cannot say that it is clear that this was done, then the burden shifted back to the State, and it became incumbent upon it to introduce such evidence in rebuttal as would overcome such reasonable doubt. This is just what the State undertook to do, and the jurors by their verdict have pronounced successfully accomplished, and the trial judge concurred in such finding by refusing the motion for a new trial, which questioned the sufficiency of the evidence to warrant such conclusion. In the case of Williams v. State, *supra,* following prior decisions of this court, especially Armstrong v. State, *supra,* and Davis v. State, *supra,* we held that, "Where the question of a defendant's sanity and responsibility has been fairly submitted to the jury, both in the evidence, and in the charge of the court, this court will not reverse the judgment on the ground that the evidence was sufficient to raise a reasonable doubt of the defendant's sanity at the time of the homicide." In Armstrong v. State, *supra,* which also treated of the precise point now under consideration, we held that "The verdict of a jury will not be set aside on evidence of facts complicated and contradictory and which require an investigation into the character and credit of witnesses whose testimony it is necessary to com-

pare and weigh; nor will the verdict be set aside as against the weight of the evidence unless it preponderates so strongly against the verdict that the court cannot conclude such verdict was the result of a due consideration of the evidence." Here, as in dealing with verdicts generally, as we have already said, the test to be applied is whether or not the jurors, acting as reasonable men, could have reached the conclusion, after a due consideration of all the evidence adduced, that the defendant was sane at the time of the commission of the crime. If this question can be answered in the affirmative, the finding of the jury should not be disturbed, unless some errors of law or procedure were made to appear which call for a reversal of the judgment. I would refer to the note to Armstrong v. State, *supra,* found on page 484 of 17 L. R. A., and the authorities there cited from other jurisdictions upon this point. I am impelled to the conclusion that the question which I have propounded as to the verdict must be answered in the affirmative in the instant case. The state introduced several witnesses in rebuttal, who, after detailing or relating the facts and circumstances upon which they based their conclusions, gave it as their respective opinion that the defendant was sane at the time the homicide was committed. The duty is cast by the law upon the jury of passing upon conflicting evidence and determining the credibility of witnesess, and it is well that is so, for the jurors are in a much better position to perform this delicate and responsible task than the members of an appellate court. As was forcibly said by Chief Justice Anderson in Carter v. Bennett, 4 Fla. 283, text 356, which was quoted and approved by Chief Justice DuPont in Bridier v. Yulee, 9 Fla. 481, text 485, as also by the writer of this opinion in Walker v. Lee, 51 Fla. 360, text 369, 40 South. Rep. 881, text 884, "Everyone

at all familiar with the incidents of a jury trial, must admit the impossibility of conveying to an appellate tribunal a perfect transcript of the evidence given to a jury. The tongue of the witness is not the only organ for conveying testimony to the jury; but yet it is only the *words* of a witness that can be transmitted to the reviewing court, while the story that is told by the manner, by the tone, and by the eye of the witness, must be lost to all but those to whom it is told. The testimony of one witness, given with calm self-possession, an erect front, and an unhesitating accent, imports verity as strongly as a record, while the confusion, the hesitation, and trembling of another will contradict to the eye what his faltering tongue has uttered to the ear. Yet the testimony of each will stand alike before the court of review."

The next point to be considered is, was the question of the defendant's sanity and responsibility fairly submitted to the jury, both in the evidence and in the charges and instructions given by the trial court? The defendant, through his counsel, earnestly contends that it was not, and has assigned certain errors, which he insists call for a reversal of the judgment. These assignments I shall now proceed to consider. After the State had called to the witness-stand a number of witnesses in rebuttal and after they had given in their testimony, both on the direct and on the cross-examination, the defendant made the following motion: "We move the court to strike out and withdraw from the jury the testimony of the young man Dell Mason that in his opinion the defendant was sane, also his testimony that in his opinion the defendant was capable of distinguishing between right and wrong.

Now as a separate motion, because I wish these motions disposed of separately we move that the same matter

be struck from the testimony of Doctor Nichols, the dentist, also from the testimony of W. G. Patterson. Also from the testimony of Mr. Couch. Also from the testimony of Mr. Morse. Also from the testimony of Mr. Johnson, and also from the testimony of D. B. Jerni gan, the keeper of the pool room. Also from the testimony of J. C. Gibert. Each one of those to be consider as a separate motion. The motion is to withdraw from the jury the opinion of the witness based upon those circumstances, because it is an opinion based on such slender predicate that it has no value, the jury is as well qualified as the witness to form an opinion, and the opinion should not have been allowed at the time."

Upon this motion the court made the following rulings:

"The motion is denied as to Mr. Patterson, exception noted.

Denied as to Mr. Couch, exception noted.

Denied as to Mr. Smith, exception noted.

Denied as to Mr. Gibert, exception noted.

Denied as to Mr. Morse, exception noted.

The motion is granted as to Dell Mason, Henry Johnson and D. B. Jernigan.

THE COURT: Gentlemen of the jury the court instructs you that you shall not consider that part of the testimony of Dell Mason, wherein he stated that he thought that the defendant was sane and capable of distinguishing between right and wrong. That applies also to the testimony of Henry Johnson, the same. You are instructed by the court that you shall not consider the testimony of Henry Johnson wherein he stated that the defendant was sane and that he is capable of distinguishing between right and wrong, if he did so testify, and also the testimony of D. B. Jernigan, the court instructs you that you are not to consider the testimony of D. B. Jernigan

wherein he stated that the defendant is sane and capable of distinguishing between right and wrong, if he did so testify."

Upon these respective rulings the defense has predicated assignments from two to six inclusive. A careful reading of the bill of exceptions where in the questions propounded to these respective witnesses, the objections interposed thereto, the rulings thereto and the answers given thereto are all set forth discloses that every opportunity was afforded the defendant for interposing objection to questions, and the fullest scope for cross-examination, of which he availed himself freely, in a number of instances securing favorable rulings from the court on his objections. No motions were made to strike out the testimony of any of these witnesses, wherein they had given their opinion as to the sanity of the defendant, of which complaint is now made through these several assignments, while such witnesses were on the stand, but the defendant deliberately waited until after they had all testified and he was fully informed of what their testimony was, when he made the motion which we have copied above. It seems to me that this motion came too late. Where no objections are interposed to questions propounded to a witness and his testimony is admitted without objection, the party so failing to object is not entitled as a matter of right to have the responsive testimony of the witness stricken out on motion, even though it may be irrelevant or incompetent, and open to attack by proper grounds of objection. When evidence which may have been irrelevant, or otherwise open to an objection seasonably made, has been admitted without objection, the witness having been examined and cross-examined by the respective parties, it is not error to deny a motion to strike out such evidence made after its ten-

dency and effect have been disclosed. A party cannot be permitted to lie by and experiment upon the testimony by failing to interpose objections thereto at the proper time, and ascertain what might come of it, for benefit or advantage, and then, if it turns out to be unpropitious for him, seek to have it excluded altogether on motion. Because a cross-examination shakes the credibility, or demonstrates the inaccuracy and unreliability of the testimony of a witness given by him on his direct examination, it furnishes no reason or ground for striking out such testimony on motion, but, if it is otherwise proper testimony, it remains for the proper consideration of the jury—both the testimony brought out in direct examination as well as that elicited on the cross-examination. Platt v. Rowan, 54 Fla. 237, 45 South. Rep. 32; Lewis v. State, 55 Fla. 54, 45 South. Rep. 998; Wilson v. Jernigan, 57 Fla. 277, 49 South. Rep. 44. These principles might well be held decisive of these assignments, but, again *in favorem vitae*, I have carefully examined the testimony of these respective witnesses and after so doing am of the opinion that the defendant has no real ground for complaint. I fully approve of our holding in Armstrong v. State, 30 Fla. 170, 11 South. Rep. 618, 17 L. R. A. 484: "Non-expert witnesses cannot express a general opinion as to sanity nor can they give an opinion independent of the facts and circumstances within their own knowledge; but they can detail the facts known to them which show insanity, and thereupon express an opinion as to the sanity of the person whose mental condition is being investigated. The value of such testimony will depend largely upon the opportunities of the witnesses for correct observation of the appearances and conduct of the person whose mind is claimed to be unsound, as well as the character of such appearances and conduct." I fail

to find wherein this principle was violated during the examination of these witnesses. The rights of the defendant appear to have been well safe-guarded, consequently I think that these assignments should be held not to have been sustained. This disposes of all the assignments based upon the evidence and I must now turn to those predicated upon the charges and instructions.

It is insisted that the court erred in refusing to give the eleventh instruction requested by the defendant, which is as follows:

"If you believe from the evidence that defendant sometime prior to the 16th day of March, 1912, was insane, then the presumption will be that he remained insane until this is overcome by evidence of his sanity." In support of this assignment, the following authorities are cited to us: Armstrong v. State, 30 Fla. 170, 11 South. Rep. 618, 17 L. R. A. 484; State v. Robbins, 109 Iowa, 650, 80 N. W. Rep. 1061; Allams v. State, 123 Ga. 500, 51 S. E. Rep. 506; 16 Amer. & Eng. Ency. of Law (2nd ed.) 604, all of which have been examined. I am of the opinion that this instruction is defective because it is not sufficiently full and fails to state the rule correctly. See Armstrong v. State, *supra*, wherein we held that, "where insanity of a permanent type, or of a continuing nature, or possessed of the characteristics of an habitual or confirmed disorder of the mind, as distinguished from temporary spasmodic mania, or disorders of mind produced by the violence of disease, is shown to have existed a short time prior to the commission of an act, it is presumed to continue up to the time of the commission of the act, unless this presumption is overcome by competent testimony." Tested by this principle, the vice in the requested and refused instruction becomes at once apparent. In addition to the authorities collected in the

cited case, the principle announced therein also finds support in 16 Amer. & Eng. Ency. of law (2nd. ed.) 604, and authorities cited in note 1 on page 605. See also Davis v. State, 44 Fla. 32, 32 South. Rep. 822.

An assignment is also based upon the giving of that portion of the general charge, numbered 13, which is as follows:

"In this case the defendant has put in issue the question of his sanity or insanity at the time of the commission of the alleged crime. The court instructs you that you are the judges of the defendant's sanity or insanity at the time, according to the facts and circumstances of the case as they are in evidence before you. Non-expert witnesses who know the defendant and are conversant with his acts and doings are allowed to give their opinions, based upon their knowledge of the facts and circumstances of the case, as to the defendant's mental condition; but at the same time you should bear in mind that such evidence is merely for your enlightenment and conideration and you are the sole judges, yourselves, of all the facts and circumstances and evidence in the case as to the defendant's sanity or insanity, at the time of the commission of the alleged offense."

As I have already observed, no experts testified, either on behalf of the State or the defendant, as to the sanity or insanity of the defendant, therefore I fail to see wherein the court by this instruction invaded the province of the jury by singling out and emphasizing specific parts of the testimony for consideration by the jury, without reference to other parts, as is contended by the defendant. I fully approve of the principle announced in Baldwin v. State, 46 Fla. 115, 35 South. Rep. 220, and Williams v. Dickenson, 28 Fla. 90, 9 South. Rep. 847, cited and relied upon by the defendant, but am of the opinion

that they do not support his contention. It may well be that some of the words used in this portion of the general charge were not aptly chosen or happily selected. It would have been better if the trial judge had not stated to the jury that the opinions expressed by the non-expert witnesses as to the sanity or insanity of the defendant were merely for their "enlightenment and consideration," but, as he immediately after using such expression proceeded to tell the jury that they were the "sole judges," themselves, "of all the facts and circumstances and evidence in the case as to the defendant's sanity or insanity, at the time of the commission of the alleged offense," I do not think that such language was calculated to mislead or confuse the jury.. It is patent that the words "such evidence," from the context, could refer only to the *opinions* of the non-expert witnesses, who had testified, as to the sanity or insanity of the defendant, based upon the facts and circumstances which they had detailed, and not to such facts and circumstances themselves. Since the question of the defendant's sanity had been put in issue, the law cast the burden upon the jury of determining it from the evidence. In order to do this they had to consider all the facts and circumstances detailed before them by the different witnesses and apply thereto their own powers of reasoning by using their own mental processes. In so doing they could also consider the opinions and conclusions expressed by the different witnesses, based upon such facts and circumstances, give such credit and weight to them as they saw fit and derive whatever benefit therefrom that they could, but they were not bound by such opinions and conclusions. In fact, they could not be held to be so bound, for opposing opinions as to the sanity or insanity of the defendant were expressed by different witnesses. It was the peculiar prov-

ince of the jury to place their own value upon these opinions. I think that the doctrine enunciated in that portion of the charge of which complaint is made finds support in Armstrong v. State *supra*. See our holding therein, especially the third head-note, which we have copied above.

An assignment is also predicated on the giving of that portion of the general charge, numbered 15½ which is as follows:

"Insanity to constitute a defense (to crime) must exist to a degree that renders the party incapable of understanding the nature and character of his act, and distinguishing between right and wrong. Partial insanity, unless it attains that degree is not a defense to crime."

We have held again and again, as we expressed it in Padgett v. State, decided here at the present term, "It is settled law in this court that, in determining the correctness of charges and instructions, they should be considered as a whole; and, if as a whole, they are free from error, an assignment predicated on isolated paragraphs or portions, which, standing alone, might be misleading, must fail." Prior decisions of this court will be found there cited. I copy that portion of the general charge numbered 15, which is as follows:

"The true test of criminal responsibility, when the defense of insanity is interposed, is whether the accused had sufficient use of his reason to understand the nature and consequence of the act with which he is charged and to understand that it is wrong for him to commit it; that, if this was the fact, he was criminally responsible for it, whatever peculiarity may be shown about him in other respects. Whereas, if his reason was so defective in consequence of mental disorder, that he could not

understand what he was doing was wrong; he ought to
be treated as an irresponsible person and acquitted."

Reading those portions of the general charge, numbered
15 and 15½ together, as we must do, I am of the opinion
that this assignment has not been sustained. This opinion
is strengthened when we read still other portions of the
general charge, which we do not copy here for want of
space.   The principle which we announced in Davis v.
State, *supra,* wherein we adopted and approved the rule
laid down in McNaughten's case, 10 Clark & Fin. text p.
209, 211, as to insanity as a defense to crime, seems to
have been recognized and followed by the trial court.

An assignment is also predicated upon that portion
of the general charge numbered 20, which is as follows:

"The jury in considering the evidence in the case will
bear in mind that there is a distinction between facts
and circumstances sworn to, and inferences and opinions
drawn therefrom, you are not bound to believe the facts
and circumstances as sworn to, but you may, if you
think they are true, but as to the inferences and deduc-
tions and opinions drawn by the witnesses from the facts
sworn to that is a matter of their belief and opinion, and
you are not bound thereby, but should draw your own
deductions and conclusions and opinions from the facts
and circumstances as related by the witness should you
believe them."

I think that what I have said in treating the assign-
ments based upon those portions of the general charge,
numbered 13 and 15½ is sufficient to dispose of this as-
signment adversely to the contention of the defendant.
In fact, this portion of the general charge fitly supple-
ments and would seem to remove any doubt as to the
proper construction to be placed upon that portion of

the general charge numbered 13. I content myself with what we said there.

The twelfth assignment is based upon that portion of the general charge, numbered 14, which is as follows:

"Moral depravity or moral insanity, so called, which results, not from any disease of the mind, but from a perverted condition of the moral system, where the person is mentally sane, does not exempt from responsibility for crime committed under its influence."

It is contended, in support of this assignment, that, as there was no evidence adduced of the moral insanity or moral depravity of the defendant, this charge was erroneously given. Tischler v. Kurtz Bros., 35 Fla. 323, 17 South. Rep. 661, is cited to us wherein we held "A charge of the court to the jury, though asserting a correct proposition of law, will be error when there is not sufficient proof to sustain a verdict on the theory of the case submitted to the jury by the charge." I fully approve of this holding which has been followed in other cases. See Bacon v. Green, 36 Fla. 325, 18 South. Rep. 870. But I think that the trial judge did not by this charge submit the case to the jury upon the theory of moral insanity, as a comparison with other portions of the general charge will readily show. I refer especially to the two preceding charges, numbered 12 and 13, the latter of which I have copied above, and the two charges immediately succeeding, 15 and 15½, each of which I have also copied above. Evidently what the trial judge was attempting to do in these several charges was to define insanity and to give the true test of criminal responsibility, a confessedly difficult task, as all judges who have attempted to frame such definitions have realized. As in defining reasonable doubt, an almost impossible task, the trial judge, following in the footsteps of some of the most distinguished

jurists, who have defined a reasonable doubt by stating what it was not, sought to define legal insanity, which would exempt one from criminal responsibility for his acts, by stating what it was not. That moral insanity may not be such legal insanity see Copeland v. State, 41 Fla. 321, 26 South. Rep. 319, wherein we held that the moral insanity rule was the doctrine of irresistible impulse, and Davis v. State, 44 Fla. 32, 32 South. Rep. 822, wherein we held that the phase of insanity commonly known as the "irresistible impulse" doctrine is not recognized in Florida. It is not contended that this portion of the general charge of which complaint is made does not state the law correctly, but simply that it is not warranted by the testimony. Read in connection with the other portions of the general charge upon the subject of insanity, as it must be, I am clear that no error was committed in giving it.

The thirteenth and last assignment is based upon the giving of that portion of the general charge, numbered 16, which is as follows:

"The defendant is entitled to the benefit of any reasonable doubt, arising from the evidence or lack of evidence as to his sanity, as well as to whether he actually killed the deceased; but a reasonable doubt is not a possible, conjectural or speculative doubt; for all human affairs are subject to such doubt; but is such a doubt as would spontaneously arise from the evidence or lack of evidence, so that you could not say that you have an adibing conviction, amounting to a moral certainty, of the defendant's guilt, if you as reasonable men, have no such doubt of his guilt, or as to his sanity, it is your duty to convict him."

The complaint made of this charge is the use of the word "spontaneously." It may not have been the best word to

have used, but it was approved in State v. Maxwell, 42 Iowa 208, and State v. Neel, 23 Utah 541, 65 Pac. Rep. 494. See also Robertson v. State, 9 Tex. App. 209, and Smith v. State, *Ibid.* 150, and 7 Words & Phrases 5971. It would seem to be equivalent to the word naturally, which has the approval of eminent jurists. See our discussion of reasonable doubt and the authorities cited in Lovett v. State, 30 Fla. 142, 11 South. Rep. 550, 17 L. R. A. 705. I do not see how the use of the words spontaneously could have been harmful to the defendant. I am not prepared to say that it was not correctly and properly used. See the definitions given of it in Webster's New International Dictionary. Read in connection with the other portions of the general charge wherein reasonable doubt was defined, I am clear that it could not well have misled or confused the jury.

Having found no reversible error, I think that the judgment should be affirmed.

COCKRELL, J., concurs.