UNITED STATES *v.* EAGAN.

*Circuit Court, E. D. Missouri, E. D.* March 26, 1887.)

1. GRAND JURY—DRAWING—FEDERAL COURTS.

The act of congress of June 30, 1879, with reference to drawing jurors for the courts of the United States, did not repeal Rev. St. U. S. §§ 800, 802, 804, or 808.

2. SAME—STATE PRACTICE.

There being no federal statutes regulating challenges to grand jurors, the federal courts may, under Rev. St. U. S. § 722, follow the practice of the courts of the state in which they are held, with reference to objections to indictments presented by a grand jury, on the ground of irregularity in the method of selecting the members of the jury.

3. SAME—IRREGULAR SELECTION—PLEA IN ABATEMENT.

The directions in the Missouri statutes as to the manner of drawing grand jurors are merely directory; and, under the decisions of the supreme court of that state, objections to the manner of drawing the members of that body cannot be raised by plea in abatement to an indictment presented by it, when it appears that the jurors irregularly chosen were competent and qualified jurors, residing in the district, and that the only irregularity consists in the method of selecting them.

4. SAME—FULL PANEL—DRAWING FROM WHEEL.

Under Rev. St. U. S. § 808, providing that "if, of the persons summoned less than 16 attend, they shall be placed on the grand jury, and the court shall order the marshal to summon * * * from the body of the district, and not from the by-standers, a sufficient number of persons to complete the grand jury," the court has the right to determine of how many persons, up to 23, the grand jury shall consist; but if more than 16 and less than the number ordered attend under the first *venire,* and the court sees fit to require an additional number to make up the full panel, as first ordered, the deficiency must be supplied by ordering additional names to be drawn from the wheel, and not by directing the marshal to select the additional jurors from the body of the district, or from particular localities of the district.

5. SAME—VIOLENT PARTISAN.

The fact that a man is a member of a political party, and a strong partisan, does not affect his qualification as a grand juror.

Indictment under Rev. St. U. S. § 5512, for fraudulent registration. On demurrer to plea in abatement.

*T. B. Bashaw, J. O. Broadhead*, and *P. H. Dyer*, for the United States. *W. K. Marshall* and *C. H. Prince*, for defendant.

BREWER, J., (*orally.*)  In this criminal case a plea in abatement has been filed.  The matter which is presented thereby is one affecting the regularity of the organization of the grand jury, and not one affecting the qualifications of the jurors; for the fact that a juror belonged to one party, and was a strong partisan, would be no ground of challenge, even if presented before the jury was impaneled and sworn, any more than a challenge on the ground that he belonged to one church, and was a strong and bigoted adherent of that church.  Neither party affiliation nor religious beliefs nor church adhesion affect the qualifications of a juror, grand or petit; but it is insisted there was an irregularity in the organization of this grand jury, in that five of the jurors were not drawn in the manner provided by the act of 1879.  But a challenge to a grand jury, based on the mere ground of irregularity in its organization, was never regarded with any favor; less so to-day than ever.  Many states have considered the grand jury superfluous, and have authorized prosecutions of all offenses, even the highest, by a simple information filed by the prosecuting attorney; and many states, even where a grand jury is preserved, have by statute limited to a very narrow extent the challenges which may be made to it.  Among those states is Missouri, and, by repeated decisions of its supreme court, it is beyond question that no matter of this kind could be raised by plea in abatement to an indictment presented in a state court.

The federal statutes are silent, and contain no express provisions in respect to the matter of challenging a grand juror in any way.  Section 722 of the Revised Statutes contains this provision:

"The jurisdiction in civil and criminal matters conferred on the district or circuit courts by the provisions of its title, and of title ' Civil Rights,' and of title ' Crimes,' for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect.  But in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statute of the state wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."

Section 800 (the last clause of which was expressly repealed by the act of 1879) reads:

"The jurors to serve in the courts of the United States, in each state respectively, shall have the same qualifications, subject to the provisions hereinafter contained, and be entitled to the same exemptions, as jurors of the highest court of law," etc.

Mr. Conkling, in his treatise on the practice of the United States courts, insists that there are cogent reasons for holding that this refers, not merely to the mere qualifications as to citizenship, age, residence, etc., but that it extends to all the proceedings for challenging and determining the qualifications of jurors, and to that extent incorporates the laws of the state. Clearly, with these two sections of the federal statute we have the right, if we are not bound in every case in which there is no express provision of the federal statute, to apply the provisions and the laws of the state in which the court is held; and, applying the laws of Missouri, there can be no question but that this plea in abatement must be overruled.

I might stop here, and yet I desire to add a word in reference to this act of 1879. I do not think that it carries the meaning, or bears the construction, which counsel have put upon it. Nor do I think that sections 802, 804, and 808 are repealed by implication by it. Repeals by implication are never favored. The question which underlies them is one of the intent of the legislature. That intent is very clear, when they, in terms, mention a single clause of a section, the subsequent section, and then, passing a few, two more sections in the same article, and expressly repeal them, not to disturb the sections, and parts of a section, which they do not mention. This act of 1879 is interpreted by counsel as meaning that no juror could be placed in that jury-box, whether from the regular jury or summoned as talesman, unless his name had been drawn, in the regular way, out of the box containing at the time 300 names. The very difficulty of carrying into effect the act thus interpreted is strong reason for believing that such was never the intent of congress; for, bear in mind that that box must be full; that the names must be placed in by the commissioner and the clerk alternately. Did congress expect that the jury commissioner would remain in constant attendance during the session of every court, for fear that, in some particular emergency, the regular panel might be exhausted, and a further juror wanted?

As said by Judge Swing, in the opinion which he wrote concerning this section: "Is it possible that if, when a jury is being impaneled, a single juror is wanting, the court must delay until the jury commissioner can be summoned, the box filled, and a name drawn, and then, if found to be in a distant part of the district, the marshal has time to go and bring him down?" The difficulty in enforcing such a construction of the statute is, I say, a very cogent reason for believing it was never the intent of congress. What was meant was this: that no regular jury, grand or petit, should be drawn or called into the courts except drawn and called in the prescribed manner. It is true that, in the first of the act, it says "that all such jurors," individualizing them; but evidently it means all such juries; for, when it comes to the closing part of the section, it says: "And no person shall serve as a petit juror more than one term in any one year; and all juries to serve in courts after the passage of this act shall be drawn in conformity herewith." Evidently that is what is intended; that all juries to be drawn are to be drawn in

conformity therewith. Indeed, it would require very clear and emphatic language on the part of congress which should be construed as taking away the power of the court, in an emergency, to fill up in a speedy way a partially formed jury.

There is ample room, placing this construction upon that section, for its operation, and for the operation of all these intermediate sections which were not in terms referred to and repealed by the act of 1878; so that I have no doubt that the court has to-day, as it always has had, the power to summon from the by-standers to fill up a petit jury, and to summon from the body of the district, in an emergency, for completing a grand jury.

The plea in abatement will be overruled.

My Brother THAYER has some comments which he desires to add.

THAYER, J. I am of the opinion that the act of June 30, 1879, with reference to drawing jurors, grand and petit, for the courts of the United States, has not repealed sections 800, 802, 804, or 808, Rev. St. U. S., as has been urged on the hearing of this demurrer. There is no conflict between the act of June 30, 1879, and sections 800, 802, 804, and 808, which renders it proper to declare a repeal by implication; and, furthermore, the sections last mentioned in great part relate to a different subject-matter. Section 800 prescribes the qualifications of jurors, which the act of June 30, 1879, does not undertake to do. Section 804 relates to the subject of talesmen for petit jurors, when the general panel has become deficient through challenges or otherwise, and section 808 defines the number of persons necessary to compose a federal grand jury, and prescribes how the panel shall be completed when less than 16 grand jurors fail to attend.

Looking at the subject-matter of these sections, it is obvious that they are unaffected by the act of June 30, 1879. But under section 808, Rev. St. U. S., the court is not authorized, in my judgment, to order the marshal to summon or select other persons than those already drawn to complete the grand jury, *except* in the event that less than 16 attend under the first *venire*. Undoubtedly the court has the right to determine of how many persons, up to 23, the grand jury shall consist; but if more than 16, and less than the number ordered, attend under the first *venire*, and the court sees fit to require an additional number to make up the full panel as first ordered, the deficiency should, in my opinion, be supplied by ordering additional names to be drawn from the wheel, and not by directing the marshal to select the additional jurors from the body of the district, or from particular localities in the district. In consequence of this view, it results that the plea in abatement shows an irregularity in the manner of choosing the 5 grand jurors in addition to the 18 who first reported.

But this irregularity in choosing the five grand jurors will not avail (after the jury has been sworn, and have found indictments) as ground for quashing the indictment so found, either on plea in abatement or otherwise, *when it appears that the jurors* so irregularly chosen were com-

petent and qualified jurors, residing in the district, and that the only irregularity consists in the method of selecting them. The plea in abatement does not, in my judgment, state any fact with respect to the five additional grand jurors that would amount to a disqualification, either at common law or under the statutes of this state, if the defendant had been present to challenge them before they were sworn. The fact that a man is a member of any political party is not a disqualification for jury service in any case, and practically that is all that is stated in the plea by way of disqualification of the five jurors in question. If the point to be decided by the court was to be determined solely with reference to the common law, and without reference to local laws, the better opinion seems to be that no objection to an indictment ought to be allowed, based merely on an irregularity in the manner of selecting a part or the whole of the grand jury which found the bill, if, in all other respects, they were duly-qualified jurors. Thus, in Thompson and Merriam on Juries, it is said that the only objection which can be taken to the grand jurors by plea in abatement, after they have been sworn and made presentments, "must be such as would disqualify the juror to serve in any case; in other words, the plea must show the absence of positive qualifications demanded by law," and not merely an irregularity in the method of selection. *Vide* Thomp. & M. Juries, §§ 533–536, inclusive, and authorities cited.

But this is a matter wherein, under section 722 of the Revised Statutes of the United States, (there being no federal statutes regulating challenges to grand jurors,) we are authorized, in my opinion, to conform our ruling to the practice which obtains in the state courts of Missouri, and under the practice in the state courts it is clear beyond question that the plea in abatement states no valid ground of objection to the indictment. It has long been the settled rule in this state, affirmed by a number of decisions in the court of last resort, that a defendant, neither by challenge to the array, nor by plea in abatement, nor motion to quash, can take any exceptions to an irregularity in the manner of choosing the grand jury by which the bill was found. Directions as to the manner of drawing grand jurors are held in this state to be merely directory. *Vide State* v. *Bleekley*, 18 Mo. 428; *State* v. *Welch*, 33 Mo. 33; *State* v. *Connell*, 49 Mo. 282; *State* v. *Matthews*, 88 Mo. 121.

In this matter I think we are authorized to follow a well-settled rule of criminal practice in the state courts, there being no act of congress declaring a different rule.

The demurrer to the plea should be sustained.