STATE OF MINNESOTA *vs.* HENRY H. SCOTT.

## August 5, 1889.

**Trial for Murder—Challenge of Juror.**—The defendant in a criminal trial, who waives his right to challenge a juror peremptorily when the juror is called as prescribed by statute, has not the right to do so after the panel is completed, although the jury has not been sworn.

**Same—Evidence—Fact not made known to Defendant.** — The court may properly exclude evidence the admissibility of which depends upon the fact having been communicated to the defendant, unless such communication is first shown.

**Same—Admissibility must be made Apparent.**—An offer of evidence which is not shown to be material, competent, or relevant is properly rejected. The court must be so informed as to the nature of the evidence that its admissibility is apparent.

**Same—Insanity—Questions to Expert.**—Several questions put to an expert witness, relating to the issue of insanity, *held* properly disallowed, for the reasons that facts were assumed which were unsupported by evidence, or that the questions were too indefinite to justify the giving an opinion, or that the questions required the witness to decide facts which if material were for the jury.

**Same—Evidence—Insane Delusion.**—As to one supposed to be affected with an insane delusion, a witness should not be allowed to testify, on direct examination, whether particular conduct is prompted by insane delusion or not.

**Same—Uncontrollable Insane Impulse.**—Under sections 19 and 21 of the Penal Code, an uncontrollable and insane impulse to commit crime, in the mind of one who is conscious of the nature and quality of the act, or that it was wrong, is not allowed as a defence.

**Same—Request for Instruction—Point already covered by Charge.** The court having instructed the jury as to the defence of insanity in the language of the statute, *held,* in view of the clear, unmistakable terms of the statute, that there was no error in refusing to charge the jury as requested by the defendant.

**Same—Self-Defence—Quarrel Provoked by Defendant.**—A homicide is not justifiable, and the defendant wholly irresponsible, even if the killing

was in self-defence, if in fact the defendant, armed with a deadly weapon, sought out the deceased, and by insulting language intentionally provoked the assault of the deceased, and with the purpose of using his weapon in an emergency.

Defendant was tried in the district court for Pine county, before *Crosby*, J., and a jury, on an indictment for murder in the first degree, was convicted of murder in the second degree, and appeals from an order refusing a new trial. The deceased, Sidney K. Irwin, was killed, on November 22, 1888, by a shot from defendant's pistol in a scuffle immediately following abusive language addressed to him by defendant, who, according to his own testimony, had (taking his wife with him) sought out Irwin to demand an explanation of acts done by him a few days before and words spoken by him the previous summer. Two shots were fired, one of which took effect and proved fatal. The grounds of defence were (1) that the pistol went off by accident, after the men had clinched and defendant had been thrown, and Irwin was trying to draw the pistol from defendant's pocket; (2) that the second shot was fired by defendant in self-defence while the men were struggling upon the ground; (3) insanity.

*Henry Johns*, for appellant.

*Moses E. Clapp*, Attorney General, and *L. H. McKusick*, for the State.

DICKINSON, J. Upon an indictment for murder in the first degree the defendant was found guilty of murder in the second degree, which, as defined by our Penal Code, involves a homicidal design, but without premeditation. This appeal is from an order refusing a new trial.

There was no error in refusing to allow the defendant to challenge jurors peremptorily after 12 jurors had been called, and either accepted as jurors without challenge, or, if challenged, found to be competent. The defendant, having waived his right to challenge peremptorily as to some one or more jurors at the time and in the order prescribed by statute, when the juror was called, had no right, after the panel was completed, to peremptorily reject jurors who had been accepted, although the jury may not yet have been sworn. *State* v. *Armington*, 25 Minn. 29.

The court properly refused to receive in evidence, in the order in which it was offered, the conversations of the deceased with the witness Parker, referred to in the first assignment of error. It was enough to justify the ruling of the court that it was proposed, first, to prove the statements or conversation of the deceased, and afterwards to show that the same had come to the knowledge of the defendant. The ruling of the court that this order of proof was objectionable was a proper and reasonable exercise of judicial discretion. As to statements of the deceased, the admissibility of which depended upon the fact that they had been communicated to the defendant, it was well to require some proof of such communication having been made, before allowing the statements to be given in evidence. It should be assumed that the statements of the deceased, referred to, (excepting such as were received in evidence,) were such as would not have been admissible unless knowledge of them had come to the defendant; for the offer is coupled with the proposal to show the latter fact. It may be added that the court cannot be said to have erred in rejecting this evidence, for the further reason that the nature of the declarations or language proposed to be shown is not disclosed, except that they related to the defendant and his wife. *State* v. *Herrick*, 12 Minn. 75, (132;) *State* v. *Staley*, 14 Minn. 75, (105.) The fact that the defendant had been allowed to prove so much of the conversation as was claimed to be of a threatening character towards the defendant did not entitle him also to introduce the whole conversation in evidence.

The distinct offer was made of "declarations made by Sidney K. Irwin [the deceased] to the witness [Parker] prior to the homicide, for the purpose of showing that Sidney K. Irwin had a vicious mind towards the defendant in this case, and for the purpose of furnishing a motive why he himself should have brought about the attack, and struck, as claimed by the defendant, the blow which brought on this whole encounter." It is claimed in behalf of the defendant that he acted in self-defence, and evidence showing hostility on the part of the deceased would have been relevant. This offer was too indefinite. It does not appear what the declarations proposed to be shown were, nor even is their general nature dis-

closed. It was not error to reject evidence offered "for the purpose" indicated, unless the evidence was competent to prove the facts desired to be established. Whether the declarations to which the offer related would or would not have been competent evidence was not disclosed to the trial court. It is not sufficient, to justify the assignment of error, that the evidence was offered for the purpose of proving material facts, and that the defendant's counsel may have deemed the proposed evidence to be competent. The decisions above cited are decisive upon this point.

Error is assigned for the refusal of the court to allow an expert witness, Dr. Collins, to answer several questions relating to the sanity of the defendant. There was no error in these rulings. Some of the reasons for this conclusion we will briefly announce. The first of these questions assumes that a delusion existing in the mind of the defendant, as to his wife's fidelity, was "foreign to the whole of his healthy thought and feeling," and that he had theretofore been entirely trustful concerning her. We discover no evidence to support the assumption.

The next question, abbreviated, is whether, if the defendant, having such a delusion, "and as a reason for such delusion, based his actions upon the action of a man rapping upon his [defendant's] bedroom window,  *  *  *  that would indicate a derangement of mind on that subject." Of this it is enough to say that, even if it is not altogether meaningless, it is too indefinite to justify an expert opinion upon the issue of insanity. An opinion is asked to be predicated upon "actions" of the defendant the nature of which is undisclosed. What is meant by the reference to the actions of the defendant "as the reason for" his own delusion?

The next question has a like fault. An opinion is asked as to whether, if a husband, impelled by facts going to produce such a delusion, "attempts *certain* acts, does *certain* things, goes to *certain* places for the purpose of ascertaining *certain* facts," etc., is impelled by the delusion instead of his reason. This is subject to the further objection, which is applicable also to the next question put to this witness, that it called upon him to decide matters of fact which, if at all material, were for the jury. In the case of one entertaining an

insane delusion upon a particular subject, it is not for an expert witness to testify whether particular conduct, not in itself irrational, is prompted by the insane delusion or by sound reason.

Some questions more worthy of serious attention arise upon the charge to the jury.   It will be necessary to consider the effect of section 19 of our Penal Code, enacted in 1885, which reads: "A person is not excused from criminal liability as an idiot, imbecile, lunatic, or insane person, except upon proof that, at the time of committing the alleged criminal act, he was laboring under such a defect of reason as either (1) not to know the nature and quality of the act he was doing; or (2) not to know that the act was wrong."   We shall also hereafter refer to section 21 of the Code as bearing upon the question under consideration.   The court charged the jury in the language of the statute, which was several times repeated, but refused to give several instructions requested on the part of the defendant.   Among the latter were some involving the proposition, in various forms, that, if the homicide was committed from uncontrollable impulse, resulting from mental derangement, the defendant was not responsible.   It is unnecessary to decide whether, independently of this statute, the law of insanity would be deemed to recognize the possibility of such an impulse in a mind conscious of the *nature* and *quality* of the act committed, and of its *wrongfulness*.   However that might be, we are satisfied, both from the language and natural construction of the statute, and from the circumstances under which it was enacted and to which we are about to refer, that this is not a new principle in the law of this state; and that its omission from the statement in the statute of the conditions affording exemption from criminal responsibility has not been from mere inadvertence, but that it was intended to be excluded.

In 1843, after the trial of McNaghten for the murder of Mr. Drummond, and in the course of proceedings in the house of lords growing out of the acquittal upon the ground of insanity, several questions as to the existing law of insanity were formulated and submitted to the judges for their opinion.   Among these were the following: "What is the law respecting alleged crimes committed by persons afflicted with insane delusions in respect of one or more particular subjects or

persons, as, for instance, where, at the time of the commission of the alleged crime the accused knew he was acting contrary to law, but did the act complained of with a view, under the influence of insane delusion, of redressing or revenging some supposed grievance or injury, or of producing some supposed public benefit?" "What are the proper questions to be submitted to the jury where a person alleged to be afflicted with insane delusion respecting one or more particular subjects or persons, is charged with the commission of a crime, (murder for example,) and insanity is set up as a defence?" "In what terms ought the question to be left to the jury as to the prisoner's state of mind at the time when the act was committed?" The judges, deeming that their opinion was thus properly invoked, answered these questions, Lord Chief Justice Tindal announcing the opinion of all the judges, excepting that of Mr. Justice Maule. The first of the questions above recited was assumed to be confined to persons laboring under partial delusions only, and not in other respects insane. As to such, it was answered: "He is nevertheless punishable, according to the nature of the crime committed, if he knew at the time of committing such crime that he was acting contrary to law; by which expression we understand your lordships to mean the law of the land." To the other two questions above stated the substance of the answer, so far as necessary to be here considered, was that the jury ought to be told "that, to establish a defence on the ground of insanity, it must be clearly proved that at the time of the committing of the act the party accused was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know he was doing what was wrong." *McNaghten's Case*, 10 Clark & Fin. 200; 1 Russ. Crimes, (9th Am. Ed.) 19. While this declaration of the law by the judges of England has been subjected to some criticism, it remained unmodified, and was generally accepted as an authoritative statement of the law. Mr. Justice Stephen, in his History of the Criminal Law of England, although questioning the correctness or completeness of that statement of the law, says, (volume 2, p. 153:) "It has been the general practice ever since for judges charging juries in cases in which the question of insanity arises to use the words of

the answers given by the judges on that occasion. It is a practice which I have followed myself on several occasions, nor until some more binding authority is provided can a judge be expected to do otherwise, especially as the practice has now obtained since 1843."

In the state of New York in 1847, in *Freeman* v. *People*, 4 Denio, 9, 28, the above language of the English judges was recited as embodying the law as it should be presented to the jury. It was further said, that "where insanity is interposed as a defence to an indictment for an alleged crime, the inquiry is always brought down to the single question of a capacity to distinguish between right and wrong at the time when the act was done." In *Flanagan* v. *People*, 52 N. Y. 467, (A. D. 1873,) the law was again affirmed to be as set forth in the language of Tindal, C. J., which had been given in charge to the jury; and the doctrine of uncontrollable impulse, as co-existing with a perception of the moral quality of the acts done, was rejected as "a new element," which had not been accepted by courts of law. See, also, *Walker* v. *People*, 88 N. Y. 81. In 1881, the legislature of New York adopted a Penal Code, the 21st section of which was substantially, and as afterwards amended was exactly, the same as section 19 of our Penal Code, above recited; our law having been copied from that of New York. It will be observed that the law of insanity as a defence, as thus embodied in the statute of New York, is put in almost the exact language of the opinion of the judges of England upon the subject, and which for nearly 40 years had been the declared law of that realm. The same language had also been adopted by the courts of New York as expressing the law, the distinct doctrine of uncontrollable impulse having been rejected.

It is thus apparent that when, in 1885, our Penal Code was adopted, section 19 being copied from the 21st section of the Code of New York, the meaning and effect of the language employed, and which for 40 years had been a familiar formula in the law of insanity although not everywhere accepted as correct, was well understood as not embracing or recognizing the element of irresistible impulse, independent of the capacity to understand the nature and quality of the act committed, or its wrongfulness. The statute having been enacted in that form without modification, defining distinctly the

conditions which alone shall afford exemption from criminal liability, the courts cannot declare that upon other grounds, also, one may be exempt from responsibility. The language of the statute is plain and unambiguous, and it prescribes the *only* grounds upon which the defence of insanity is allowed. It was never contended, I think, that the same language, substantially, employed in the opinion of the judges to the house of lords, was susceptible of being construed as recognizing the principle of uncontrollable impulse as a defence, although it has been claimed that the opinion was erroneous, or that it did not express the whole of the law of insanity as a defence, because that principle was not recognized. It may be added that in *People* v. *Carpenter*, 102 N. Y. 238, (6 N. E. Rep. 584,) not only is the decision in *Flanagan* v. *People* followed, but it is declared that the principle contended for is impliedly condemned by the Penal Code. Section 21 of our Code, to which we have referred, lends further support to the conclusions above stated. It is there enacted that "a morbid propensity to commit prohibited acts, existing in the mind of a person who is not shown to have been incapable of knowing the wrongfulness of such acts, forms no defence to a prosecution therefor." In view of the statute, the court did not err in refusing to give the instructions to which we have referred.

The assignments of error based upon the refusal of the court to instruct the jury relative to the defence of insanity, in accordance with several other requests than those already referred to, should not be sustained. The charge, as given in the language of the statute, many times repeated so that it must have been understood, was sufficient to clearly inform the jury as to the mental conditions which would exempt the defendant from responsibility; and we think that the instructions requested could not have made the law or its application to the case more clear to the jury. A party is entitled to have the jury clearly and fully instructed as to the law, and, where that is necessary, as to the application of legal principles to the facts in issue; but when that has been done he is not prejudiced by the refusal of the court to adopt the form of language framed by counsel, or to reiterate in various forms what has already been clearly charged. Such a course would often tend to confuse, rather than

enlighten, the jury. *O'Connell* v. *People*, 87 N. Y. 377; *Walker* v. *People*, 88 N. Y. 81, 89. The language of this statute very clearly expresses its meaning.

The fifth assignment of error is not sustained, for the reason that the court charged the jury substantially as requested.

What has before been said disposes of the questions presented under the sixth assignment of error.

The 14th, 15th, and 16th requests present matter sufficiently explained in the general charge of the court.

The 13th, 17th, and 18th requests were erroneous, unless it can be said, as a matter of law, that the homicide was justified, and the defendant wholly irresponsible, if committed in self-defence from the assault of the deceased, even though the defendant, armed with a deadly weapon, may have sought out the deceased, and by insulting language and gestures intentionally provoked the assault, and with the purpose of using his pistol in an emergency. Such is not the law. 1 Hale, P. C. 482; 1 Hawk. P. C. 105, 108, tit. "Justifiable Homicide," §§ 2, 22; *Com.* v. *Selfridge*, 1 Horr. & T. Cas. 1, 24, 26; *State* v. *Neeley*, 20 Iowa, 108; *Adams* v. *People*, 47 Ill. 376; *Stewart* v. *State*, 1 Ohio St. 66; *Rippy* v. *State*, 2 Head, 217. The evidence in the case was such that no charge that the homicide was justified, ignoring the circumstances of provocation by the defendant, would have been correct.

The evidence justified the verdict.

Order affirmed.