## AVILA v. UNITED STATES.
### No. 7647.

Circuit Court of Appeals, Ninth Circuit.
March 4, 1935.

WILBUR, Circuit Judge, dissenting.

———◆———

James E. Fenton, of Los Angeles, Cal., for appellant.

Peirson M. Hall, U. S. Atty., and Robert Winfield Daniels, Asst. U. S. Atty., both of Los Angeles, Cal.

Before WILBUR and GARRECHT, Circuit Judges, and CAVANAH, District Judge.

CAVANAH, District Judge.

The grand jury for the Southern District of California, Central Division, returned an indictment against appellant charging him with the crime of murder, on property within the exclusive jurisdiction of the United States. He was convicted by a jury of murder in the first degree, without capital punishment, and sentenced to life imprisonment. He brings this appeal and urges error in the procedure adopted by the court in the impaneling of the jury, wherein he was deprived of the right to exercise twenty peremptory challenges, as granted to him by statute, and also contends that the evidence was insufficient to sustain the conviction.

The record shows that the case came on for trial on December 14, 1933, when the impaneling of the jury began. Appellant having exercised five peremptory challenges, the panel was exhausted, and there then remained in the box eleven jurors who were examined and passed for cause, whereupon the court then required appellant, if he desired to exercise any further peremptory challenges, to exercise the same upon and as to the eleven jurors then remaining in the box; otherwise his right to exercise peremptory challenges to any of the eleven jurors would be waived and he would be limited and confined in making further peremptory challenges to new jurors called to fill the box. He objected and excepted to the ruling of the court requiring him to exercise any further peremptory challenges to the eleven jurors until the box was filled. Under protest, he then exercised peremptory challenges to seven of the eleven jurors, leaving only four jurors in the box. He then moved the court that he be allowed to reserve the right to make further peremptory challenges to any of the remaining four jurors, which was denied and excepted to. The box was then filled and appellant then exercised seven additional peremptory challenges to the jurors in the box, other than the four jurors referred to, and the box was then filled. Appellant, having theretofore exercised only nineteen peremptory challenges in all, moved the court that he be allowed to exercise two peremptory challenges to two of the four jurors—Hugh McFarland and A. A. Moody—he thinking that he had left two peremptory challenges when he only had one, before the jury was sworn to try the case. This request was denied by the court for the reason then given that appellant had theretofore waived his right to exercise a peremptory challenge to any of the four jurors named. An exception was then taken, and the trial was had.

The crucial question involved is whether the appellant, as shown by the record, was accorded his right of peremptory challenges contemplated by the federal statute, which provides that upon the trial of a criminal offense in cases of treason or capital offenses, the defendant shall be entitled to twenty and the United States to six peremptory challenges. Rev. St. § 819, now Jud. Code § 287, 28 USCA § 424. Was he denied any right to which he was entitled by the method of selecting the jury? The manner and method of exercising the right of peremptory challenges on the part of the accused, in the courts of the United States, is what is involved here. To arbitrarily deny him the right of the peremptory challenges granted by the statute is of vital importance to him and is to bar him of the principal matter concerning his trial. It runs counter to the principle of being vital to the integrity and maintenance of the system of a constitutional right of trial by jury.

■ It is evident from the course pursued that appellant was not allowed the right of

peremptory challenges given by the statute, as he had only challenged in all nineteen of the twenty, and had requested to be allowed to exercise the remaining challenge. With this result he lost the benefit of his right to exercise twenty peremptory challenges and was deprived of trial by a fair and impartial jury.

It is no answer to insist that appellant had waived his right to exercise his peremptory challenges to the four jurors referred to, because he repeatedly requested to be permitted to apply challenges to the four jurors when the box was not filled and when he had not accepted the jury.

But it is asserted by the government that appellant waived his right to exercise his full number of peremptory challenges under rule 51 of the court, when the court demanded, over his objection, that he exercise his peremptory challenges to the eleven jurors in the box and when he afterwards exercised seven challenges, leaving four jurors in the box. Rule 51 reads: "Unless otherwise stipulated by the parties, in both civil and criminal cases, juries shall be empaneled as follows: The box shall be filled and examination on voir dire had and challenges for cause taken and determined. Peremptory challenges shall then be exercised by plaintiff and defendant alternately. The box shall be filled from time to time, in the discretion of the Court. After all peremptories have been taken, or the parties satisfied, the jury shall then be sworn as a body to try the cause. In felony cases the defendant shall exercise two challenges to the Government's one until the peremptories remaining are equal, then they shall alternate."

This rule clearly provides that: "The box shall be filled and examination on voir dire had and challenges for cause taken and determined. Peremptory challenges shall then be exercised by plaintiff and defendant alternately. The box shall be filled from time to time, in the discretion of the court. After all peremptories have been taken, or the parties satisfied, the jury shall then be sworn as a body to try the cause." It shows that the jury box must be filled and all jurors examined as to any challenge for cause before any peremptory challenges are to be exercised. It further requires that the box shall be filled from time to time and does not permit the exercising of peremptory challenges until that is done, and the jury shall not be sworn to try the cause *until after all peremptory challenges have been taken.* The words "in the discretion of the court" do not, when the entire rule is considered, give to the court discretion to require challenges to be exercised before the box is filled, as that discretion relates to the filling of the box and not to requiring the exercise of peremptory challenges before the box is filled. Manifestly, the court did not follow the procedure outlined by the rule. Nor does the rule permit a ruling that appellant had waived his right to peremptory challenges to the jury, when the box was not filled at the time he was called upon to challenge. Even if the construction placed on the rule by the government be correct, and the court had the discretion of pursuing the method adopted, it would seem that if a wise and sound discretion had been exercised, and the court had given recognition to the general law applicable to the practice in the federal courts, it would not have deprived appellant of his statutory right to twenty peremptory challenges.

Having disposed of the effect of the rule of the court, we go further and recognize the procedure and method to be pursued in impaneling and challenging jurors in the federal courts to now be, in the absence of a rule of court or a rule recognizing the right of a defendant and the government to begin exercising their peremptory challenges after the box is filled, that of the common-law procedure in criminal cases, as modified and changed by the constitution and statutes of the state in which the trial is held, apply as far as the same is not inconsistent with the Constitution and laws of the United States. This thought is carried out in Rev. St. § 722, 28 USCA § 729, where it is provided that: "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of chapter 3 of Title 8, and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the Constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extend-

ed to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty."

In United States v. Eagan (C. C.) 30 F. 608, 610, after referring to this section of the statute, the court said: "Mr. Conkling, in his treatise on the practice of the United States courts, insists that there are cogent reasons for holding that this refers, not merely to the mere qualifications as to citizenship, age, residence, etc., but that it extends to all the proceedings for challenging and determining the qualifications of jurors, and to that extent incorporates the laws of the state. Clearly, with these two sections of the federal statute we have the right, if we are not bound in every case in which there is no express provision of the federal statute, to apply the provisions and the laws of the state in which the court is held." Lewis v. United States, 146 U. S. 370, 376, 13 S. Ct. 136, 36 L. Ed. 1011; Howard v. United States (C. C. A.) 75 F. 986, 34 L. R. A. 509; United States v. Wells (D. C.) 163 F. 313; Holmes v. United States (C. C. A.) 269 F. 96; United States v. Olmstead (D. C.) 7 F.(2d) 756; Roush v. United States (C. C. A.) 47 F.(2d) 444; United States v. Gill (D. C.) 55 F.(2d) 399.

There is no statute of the United States which prescribes the method of procedure in impaneling and challenging jurors in the federal courts, and that is the reason why the rule of court, or the common law, as stated, applies.

█ The right of peremptory challenges on both sides is open until the jury is sworn to try the case, unless waived. United States v. Davis (C. C.) 103 F. 457.

No conflict appears between the rule of the court and the statutes of the state of California, for the statute of that state (section 1088, Penal Code) provides that: "If all challenges on both sides are disallowed, either party, first the people and then the defendant, may take a peremptory challenge unless the parties' peremptory challenges are exhausted; and each party shall be entitled to have the panel full before exercising any peremptory challenge."

When the Legislature used the word "panel" in the statute, it no doubt was referring to the jury, for it would be impracticable to keep the panel full before exercising any peremptory challenge.

The Supreme Court of California has had occasion to refer to the California stat-

ute and has held that the right of challenge is not necessary to be exercised at any precise point of time before the jury is sworn to try the case, and that the refusal to allow the defendant the full number of peremptory challenges before the jury is sworn to try the case is error. People v. Kohle, 4 Cal. 198; People v. Jenks, 24 Cal. 11. Clearly, the method of procedure here was different from that prescribed by the laws of California.

But it is pressed on us that the appellant waived his right of peremptory challenges and therefore he cannot now be heard in asserting that the method pursued by the court deprived him of his right of peremptory challenges. We cannot agree to this, in face of the record disclosing that from the first time the court announced that peremptory challenges should be exercised by appellant (when there were only eleven jurors in the box) until the jury was sworn to try the case, appellant's counsel repeatedly requested the court to permit him to exercise his peremptory challenges when the box is filled, as to the four jurors who were left in the box when the panel was exhausted, which was refused and exception taken. From such conduct no express or implied waiver can be claimed, and the law will not imply one from the illegal ruling of the court.

Reliance is had by the government on the cases of Hawkins v. United States (C. C. A.) 116 F. 569, and Dolan v. United States (C. C. A.) 116 F. 578, where the court was considering a statute of Oregon made applicable to the District of Alaska by the act providing for a civil government for Alaska, which provided that all challenges shall be taken to each juror as he is drawn and passed for cause, and before another juror is drawn. The court was merely following the statute and practice of the state of Oregon, which required all challenges to be taken to each juror as he is drawn and passed and before another juror is drawn.

The views expressed require a reversal of the case and render it unnecessary to consider and express an opinion as to whether the evidence is sufficient to sustain the verdict, and we do not express an opinion in that regard. We see no escape from the conclusion that, under the facts stated, appellant was deprived of his right of peremptory challenges granted to him under the law, which denied him of a constitutional right of trial by jury.

The judgment is reversed, and a new trial granted.

WILBUR, Circuit Judge (dissenting).

This case involves the time within which the defendant in a criminal case must exercise his peremptory challenges.

The bill of exceptions does not disclose all that occurred in connection with the impanelment of the jury. It is stated: "Whereupon proceedings were then had and taken to impanel a jury in said cause and in said proceeding, the defendant having exercised five peremptory challenges the panel of jurors was exhausted and there remained in the jury box only eleven jurors, [naming them] who were examined and passed by both plaintiff and defendant as to any and all challenges for cause." The record omits any recital of the manner in which the five peremptory challenges were exercised and any statement in regard to challenges for cause. It may well be that the jury box was kept filled and that twelve jurors were in the box when the last of the five peremptory challenges by the defendant was taken and that what the court required the defendant to do was to continue to exercise his peremptory challenges as to all the jurors then in the box.

What I have thus far said is based upon the silence of the bill of exceptions, but if we turn to the minutes of the court with reference to the selection of the jury we find that what I have suggested as a possibility, actually occurred. The record shows the drawing of twelve names from the jury box, who were examined for cause; that McNulty was excused for cause and another juror drawn in his place, R. C. Chambers; that this juror was examined for cause by the court; that thereupon another juror, A. B. Schmitz, while the jury box was filled, was challenged peremptorily by the defendant, thus leaving one seat in the jury box vacant. The court ordered another name drawn, John H. Dixon, who was examined for cause, and then the jury box being full Hammel was excused on defendant's peremptory challenge. This vacant seat was filled by drawing the name of Peterson, who was passed for cause, whereupon Swartz, another juror, was excused on the defendant's peremptory challenge. This seat was filled by drawing Hugh McFarland, who was passed for cause, whereupon the box being still full, Johnson was excused on defendant's peremptory challenge. His seat was filled by drawing the name of Olaf M. Larson, who was passed for cause, and Frederick W. Coon was excused on defendant's peremptory challenge.

It will be observed that at the time the defendant exercised this peremptory challenge the jury box was full. But the panel being exhausted the court could not proceed as theretofore and fill the empty seat, whereupon the court required the defendant to proceed with his peremptory challenges. At this stage of the proceeding seven of the eleven jurors were excused on defendant's peremptory challenge, leaving four jurors remaining in the box. These four jurors, it will be observed, had been passed for cause and also remained unchallenged notwithstanding the opportunity given the defendant to challenge them. A special venire was issued calling for twenty jurors who were returned at 2 o'clock. The court at once ordered the box filled before any further challenges were required. One juror was excused for cause, whereupon his seat was filled. Another juror was examined and excused for cause and his seat was filled. At that time there were four of the regular jurors in the box and eight of the special venire who had been passed for cause. The defendant exercised one peremptory challenge and this seat was filled, the new juror examined for cause and passed, and one of the other jurors who had been passed for cause was thereupon excused by peremptory challenge and another juror was drawn. He was examined for cause and passed and one of the other jurors was excused. Thus the jury box was kept full and no peremptory challenge was exercised by the defendant when the jury box was not full except the seven challenges interposed immediately before adjournment. At that time, as has been stated, the box was full when the defendant exercised his fifth peremptory challenge.

It should again be noted that while this record is not before us properly because not embodied in the bill of exceptions, it is brought to us by the defendant himself and shows that the jury box was full when the defendant exercised his fifth peremptory challenge. There is no showing that the defendant was required to exercise any peremptory challenges when the jury box was not filled other than the seven peremptory challenges prior to adjournment, the number in the box having been reduced to eleven by the peremptory challenges of the defendant himself.

Two questions are involved on this appeal as to the right of the appellant to peremptorily challenge jurors. The first is whether or not he had a right to have the jury box filled each time he exercised a peremptory challenge. The other is whether or not he was entitled to challenge any juror at any time before the entire jury was sworn until his challenges were exhausted.

We will first consider the question from the standpoint of the rule of court.

Inasmuch as the rule expressly provides that the judge shall fill the jury box from time to time at his discretion, it seems clear that he was not required to have it filled all the time, for that would be following an arbitrary and definite rule as against the express language of the rule reserving discretion in the trial judge.

The question as to whether or not the provision of the rule that the twelve jurors should be sworn together to try the case carries with it, by necessary implication, the right to peremptorily challenge any juror at any time before he is sworn until he has exercised the statutory number allowed, has frequently been considered by the courts and their decisions are in direct conflict as to the proper interpretation of a statute of like import. A majority of the courts which have expressly ruled upon the question, and whose opinions have been reported, have held that as at common law the parties were required to examine and pass each juror for cause and then for peremptory challenge, and in default of such challenge the juror is thereupon sworn, that a statute which provides that all the jurors be sworn at one time did not extend the common-law right to challenge each juror as presented to one who had once been passed. The reason for the decision is stated in an early Connecticut case, State v. Potter, 18 Conn. 166, 176, from which I quote as follows:

"But it is said that by the English practice the party has a right to challenge until the juror is sworn. There each juror is sworn as soon as he has been examined and opportunity given for challenges. By our practice the jurors are none of them sworn until all have been examined and opportunity offered for challenge. Here, when one has been examined and opportunity to challenge given, he is directed to take his seat as a juror, just as in England after he has been sworn; and the delay in swearing him is not to give any privilege to the prisoner which he could not

claim elsewhere, but to prevent multiplying oaths and to save the delay incident to the administration of the oath twelve times instead of once. The prisoner now claims, as matter of right to himself, a privilege which he could have no pretence to claim after the person challenged had been declared a juror by the English practice; and if the principle claimed here by the prisoner is correct, that he must be allowed this privilege to the last moment before the trial commences the practice is wrong then, which deprives him of this privilege by swearing each juror before he has had full opportunity to make his challenge.

"The effect of the practice in both cases is the same. In the one case his opportunity is closed when the juror is sworn; in the other case when he is directed to take his seat."

This view was followed in 1859 in Iowa in State v. Shelledy, 8 Iowa, 477; in Texas in 1874 in State v. Ezell and Ivey, 41 Tex. 35, 36; and in 1889 in Minnesota in State v. Scott, 41 Minn. 365, 43 N. W. 62.

In State v. Scott, 41 Minn. 365, 43 N. W. 62, supra, it was held: "The defendant, having waived his right to challenge peremptorily as to some one or more jurors at the time and in the order prescribed by statute, when the juror was called, had no right, after the panel was completed, to peremptorily reject jurors who had been accepted, although the jury may not yet have been sworn," citing State v. Armington, 25 Minn. 29.

In Thompson v. State, 58 Miss. 62, it was held that although the defendant was entitled to a full panel before he began his peremptory challenges, that after challenging it was held to be the "correct practice to require each party, when a full panel is presented to him, to challenge all whom he desires to challenge, and not to permit experimenting by challenging one and waiting to see who is called to his place, and then to challenge others who were in the box at first," citing Tatum v. Preston, 53 Miss. 654.

This also seems to be the rule in South Dakota. The course adopted by the trial court in impaneling the jury was substantially the same as used in the case at bar, in State v. Wright, 15 S. D. 628, 91 N. W. 311. In that case the Supreme Court of South Dakota held that under the statute of that state the court might, when necessary, require a defendant to exercise his right of peremptory challenge against the

members of the regular panel before talesmen are called to complete the jury. This is based upon section 7334 of the South Dakota Comp. Laws.

In State v. Martin (1926), 32 N. M. 48, 250 P. 842, the Supreme Court of New Mexico held that a juror, after acceptance, could not be challenged peremptorily without appealing to the discretion of the trial court by a proper showing.

The Supreme Court of Colorado in Nicholson v. People, 31 Colo. 53, 71 P. 377, 378, held that: "Our statute is silent as to the manner or order in which peremptory challenges shall be made, and we have come to the conclusion that we shall follow the decisions of the courts holding that, in the absence of statutory provisions, the mode of challenges shall be left to the sound discretion of the trial court, and that, unless there has been a manifest abuse of the discretion, the action of the court will not be disturbed."

Cited in support of the rule is Thompson & Merriam on Juries, p. 292, as follows: "It is no abuse of discretion for the trial judge to compel either party, upon the full panel of twelve being presented to him, to strike off then, once and for all, every juror to whom he has objection, granting him only the opportunity of objecting to new jurors introduced to supply the places of those challenged off by himself or his adversary. On the other hand, it is within the discretion of the court to allow members of the panel to be challenged off by a party after he has once passed them," citing Tatum v. Preston, 53 Miss. 654; Fountain v. West, 23 Iowa, 9, 10, 92 Am. Dec. 405. Also cited as sustaining this view are Williams v. State, 63 Ark. 527, 39 S. W. 709; Turpin v. State, 55 Md. 462; State v. Hays, 23 Mo. 287; St. Anthony Falls Water-Power Co. v. Eastman, 20 Minn. 277 (Gil. 249); State v. Ezell, 41 Tex. 35; Com. v. Piper, 120 Mass. 185, 187; State v. Potter, 18 Conn. 166; Schufflin v. State, 20 Ohio St. 233; State v. Pierce, 8 Iowa, 231; State v. Shelledy, 8 Iowa, 477, 481; Vance v. Richardson, 110 Cal. 414, 42 P. 909.

In the California case referred to, Vance v. Richardson, 110 Cal. 414, 42 P. 909, 910, supra, a civil case, counsel attempted to reserve the right to challenge jurors until after the plaintiff had exercised his right. It was held that he was not entitled to do so. The court there said: "In the case at bar the parties, without objection by either, adopted the practice of alternately exercising their peremptory challenges while the jurors were being examined, and before the panel was filled. Under this method, when the panel was filled, it was appellant's turn, as he admits, to challenge; and, if he desired to do so, he ought to have exercised his right then. He does not complain that the court forced him to challenge before the panel was full. He could not have made such a complaint, because the panel was full. We do not see, therefore, how he was prejudiced, or that he has any just right to complain. He merely sought an advantage to which he was not entitled."

On the other hand, in State v. Pritchard, 15 Nev. 74, decided in 1880, a majority of the Supreme Court of Nevada held that under the statute of Nevada which provided that the juror must be challenged before he is sworn, until he is sworn the defendant clearly has the right to exercise the challenge.

In People v. Carpenter, 36 Hun (N. Y.) 315, decided 1885, a case similar to that at bar, it was held that a practice similar to that involved in the case at bar was illegal. This holding was based upon the fact that at common law challenges were allowed until the juror was sworn (page 317), and that under the Constitution of the State of New York this became a part of the common law of the state. It was held that that rule was also adopted by the New York statute. The court said: "Under that rule he may challenge a person who appears as a juror at any time before he is sworn, and it is not in the power of a court to deprive him of that right."

This ruling was followed by the Court of Appeals of Maryland in 1926 in Whittemore v. State, 151 Md. 309, 134 A. 322.

The above cases all deal with statutory enactments relating to the impanelment of a jury. We are here dealing with a rule of court and not with a statute. We may assume for the moment that this rule permitted the defendant to exercise a peremptory challenge at any time before the jurors were sworn. Could the trial court in the exercise of a sound discretion, with due notice to the defendant, modify that rule by requiring that jurors once passed for peremptory could not later be challenged? The general rule in the federal courts is that rules of court prescribed by the court for its guidance may in the exercise of a sound discretion be disregarded by the court. The Supreme Court in U. S. v. Breitling, 20 How.

(61 U. S.) 252, 253, 15 L. Ed. 900, decided in 1857, had under consideration a rule of a United States Circuit Court which adopted the state practice under its statutes. It was held that the state statute was only binding in the United States Circuit Court because of its rule, and that the rule could be disregarded. We quote therefrom as follows:

"The objection stated in the note is founded upon a rule of the Circuit Court, which in general. terms adopts the practice of the State courts; and the practice of the State courts, in relation to exceptions, is regulated by a law of the State, which provides that no bill of exceptions can be signed after the adjournment of the court during which the exception is taken, unless by consent of counsel in writing, when it may be signed within ten days thereafter, except in such cases as is otherwise provided.

· "But the answer to this objection is, that the statute of Alabama, and the regulation it prescribes to the courts of the State, can have no influence on the practice of a court of the United States, unless adopted by a rule of the court. And it is always in the power of the court to suspend its own rules, or to except a particular case from its operation, whenever the purposes of justice require it."

There are not a great many reported cases on that subject, but this court constantly exercises its discretion in refusing to dismiss appeals, notwithstanding a failure to comply with our rule concerning the filing of the record (rule 16), although if the rule were statutory no doubt a dismissal would be necessary. We therefore consider the question as to whether the court had a right in the exercise of sound discretion to depart from the procedure with relation to peremptory challenges which we are now assuming for the purpose of our discussion was established by that rule.

In the first place, it should be noted that on appeal the question for our consideration is whether or not there has been an abuse of discretion. In that connection it will be remembered that when the jury box was filled with jurors qualified and passed for cause, five peremptories were exercised by the defendant, and it was then nearly time for the noon recess. As result of the exercise of these challenges and the calling of other jurors to fill the place of those challenged, the panel was exhausted and it was necessary to issue a special venire for the return of talesmen at 2 o'clock. The requirement by the court that the jurors then in the box should be challenged or passed was no doubt with a view of relieving the jurors who were challenged from the necessity of returning in the afternoon, and partly, perhaps, with a view to determining the number of talesmen who should be summoned by the special venire. The defendant was not denied the right to exercise the number of challenges which the law gave him. If that had been done, of course, beyond question the case would have to be reversed. The court merely insisted that, if the defendant desired to use his reserved peremptory challenges, he must apply them to the jurors which he had not passed theretofore for peremptory. If the court had the power to depart from the method laid down in the rule, and I have no doubt that it had such power so long as the defendant was accorded his statutory right to exercise the full number of peremptory challenges, then the action of the trial court must be sustained. In so far, therefore, as the opinion of the majority is based upon the rule of the court I must dissent therefrom and am of opinion that the action of the trial court was not erroneous.

I next consider the assertion in the opinion that "in the absence of a rule the common-law procedure in criminal cases as modified by the constitution and the statutes of the state in which the trial was held apply so far as the same is not inconsistent with the constitution and laws of the United States."

The Supreme Court has held that in the absence of a statute of the United States determining the method of exercising peremptory challenges, such challenges may be exercised in the manner provided by the trial court in the particular case upon trial or by rule of the District Court; and that the statutes of the state in that regard are not binding upon the trial court and may be entirely disregarded by the trial judge unless adopted by rule of court as the rule for the impanelment of juries. We quote in support of this statement from Pointer v. U. S., 151 U. S. 396, 14 S. Ct. 410, 414, 38 L. Ed. 208, as follows:

"The objection that the jurors were not selected in the particular. mode prescribed by the laws of Arkansas, cannot be sustained. * * *

"In respect to the qualifications and exemptions of jurors to serve in the courts of the United States, the state laws are con-

trolling. But congress has not made the laws and usages relating to the designation and empaneling of jurors in the respective state courts applicable to the courts of the United States, except as the latter shall by general standing rule or by special order in a particular case adopt the state practice in that regard. United States v. Shackleford, 18 How. 588 [15 L. Ed. 495]; United States v. Richardson [C. C.] 28 F. 61, 69. In the absence of such a rule or order (and no such rule or order appears to have been made by the court below), the mode of designating and empaneling jurors for the trial of cases in the courts of the United States is within the control of those courts, subject only to the restrictions congress has prescribed, and also to such limitations as are recognized by the settled principles of criminal law to be essential in securing impartial juries for the trial of offenses. * * The complaint by the accused is that the particular mode in which the jury that tried him was empaneled was illegal. It is true that mode was not in conformity with the statutes of Arkansas. But that objection, as already suggested, cannot avail the accused. So that the inquiry must be whether the jury was organized in violation of any settled principle of criminal law relating to the subject of challenges."

The power to adopt a rule or practice concerning the impanelment of a jury is limited only by the constitutional guaranty of the right to a trial by jury. The elements constituting such a jury trial are stated by Justice Sutherland speaking for the Supreme Court in a very recent case (1930) Patton v. U. S., 281 U. S. 276, 50 S. Ct. 253, 254, 74 L. Ed. 854, 70 A. L. R. 263, which I quote as follows: " * * * We first inquire what is embraced by the phrase 'trial by jury.' That it means a trial by jury as understood and applied at common law, and includes all the essential elements as they were recognized in this country and England when the Constitution was adopted, is not open to question. Those elements were: (1) That the jury should consist of twelve men, neither more nor less; (2) that the trial should be in the presence and under the superintendence of a judge having power to instruct them as to the law and advise them in respect of the facts; and (3) that the verdict should be unanimous."

We may also add that two elements of a jury trial were set forth in an earlier case in which it was held that the trial court had denied the defendant the right to a trial by jury as defined by the Constitution. We refer to the case of Lewis v. U. S., 146 U. S. 370, 13 S. Ct. 136, 138, 36 L. Ed. 1011. It was held in that case that the challenging of jurors was an essential part of the trial of a person accused of crime and that at common law he had the right to be brought face to face with the juror when the challenges were made, and to have a list of such jurors. In that case there were 37 qualified veniremen on the panel. A list of these jurymen was furnished to the United States attorney and to the counsel for defendant and they were directed to proceed with their challenges without opportunity to see the jurors or to question them. These challenges were interposed before any juror whatever was drawn. The court said: "There is no statute of the United States which prescribes the method of procedure in empaneling jurors in criminal cases, and it is customary for the United States courts in such cases to conform to the methods prescribed by the statutes of the states. In the present instance the method prescribed by the statutes of Arkansas was not followed, nor does it appear that there exists any general rule on the subject in the circuit court of the western district of Arkansas. While the court in the present instance did not exceed its jurisdiction in directing the empaneling of the jury by a method different from that prescribed by the state statute, and while we do not feel called upon to make suggestions as to the proper practice to be adopted by the circuit courts in empaneling juries in criminal cases, yet obviously all rules of practice must necessarily be adapted to secure the rights of the accused; that is, where there is no statute, the practice must not conflict with or abridge the right as it exists at common law. * * *"

In order to avoid the inference that the common-law right to challenge jurors required the court to fill the box before any challenge is interposed, we note that in Pointer v. U. S., 151 U. S. 396, 14 S. Ct. 410, 38 L. Ed. 208, supra, the defendant was required to exercise all his peremptory challenges before any juror was placed in the box and the action of the trial court was sustained. Also, for the same reason, we note that in a later case, St. Clair v. U. S., 154 U. S. 134, 14 S. Ct. 1002, 38 L. Ed. 936, the Supreme Court sustained a rule of court requiring both parties to exhaust all challenges, peremptory or for cause, to each juror as called. This, of course, involves the conclusion that neither the right to have the jury box filled, nor the right to reserve

challenges until the entire jury is about to be sworn is a constitutional right. It is true that the common-law practice accorded with the rule adopted by the trial court in St. Clair v. U. S., supra; but this practice was not deemed an essential feaure of the right to a trial by jury. This view is supported by the interpretation that has been placed upon the above decisions of the Supreme Court.

In Tierney v. U. S. (C. C. A.) 280 F. 322, 324, it was said: "The essentials to the free exercise of the right of challenge are: First, that the defendant shall have access to the list of jurors; and, second, that he shall have presented to him face to face for challenge jurors ascertained to be legally qualified. There is no complaint that the defendant did not have a list of all the jurors, but the contention is that 28 qualified jurors should have' been presented together for challenge instead of 12."

In Kelly v. U. S. (C. C. A.) 293 F. 689, 693, it is said: "In that case [Tierney v. U. S., supra], in the opinion of the court, and the dissenting 'opinion, the method of impaneling juries in federal courts is fully gone into, with the result that where District Courts have neither by standing rule adopted the state practice regarding the impaneling of juries, nor prescribed a method of their own, or made a special order in the particular case, the manner and method of impaneling the jury is within the discretion of' the trial court, with the limitation only that, in the absence of such a rule, the court must so proceed as not to hinder or embarrass the accused in the exercise of his constitutional and statutory rights regarding the selection of juries; care being at all times taken that the accused be assured a fair and impartial trial."

I.conclude that the common law of England is not binding on the courts of the United States (see Bucher v. Cheshire R. Co., 125 U. S. 555, 583, 8 S. Ct. 974, 31 L. Ed. 795), except wherein it is involved in the constitutional right to a trial by jury, and that the method of challenge is not so involved. As already stated, the statutory law of the state is not applicable.

I will now consider the' effect of 28 US CA § 729 upon that question. This statute was enacted April 9, 1866, one year after the close of the Civil War. It was embodied in section 3 of an act to protect all persons in the United States in their civil rights and to furnish the means for their vindication (14 Stat. 27). An examination of the act shows that the act was intended primarily to protect persons who had been slaves and to protect officers of the United States government who were attempting to enforce the laws of the United States in any state (obviously the seceding states) and provides for the transfer of criminal cases from the state courts to the United States court for trial, and in this connection states: ."And if any suit or prosecution, civil or criminal, has been or shall be commenced in any State court, * * * such defendant shall have the right to remove such cause for trial to the proper district or circuit court. * * * The jurisdiction in civil and criminal matters hereby conferred on the district and circuit courts of the United States shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where such laws are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies. and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of the cause, civil or criminal, is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern said courts in the trial and disposition of such cause, and if of a criminal nature, in the infliction of punishment on the party found guilty."

It would seem clear that this provision was intended to apply only to those cases involving "civil rights and their vindication" which have been transferred from state courts to the federal court, and in such cases it was the duty of the court to enforce the state laws appertaining to the punishment of the crimes which had been committed against the state. The suggestion in United States v. Eagan (C. C.) 30 F. 608, that this section contemplates the rules for the proceedings for challenging the jurors and determining the qualification of jurors is not applicable to proceedings brought in the first instance in the federal court under the laws of the United States. In support of this conclusion it is sufficient to point out that the Supreme Court, since the enactment of this law in 1866, and since the decision in U. S. v. Eagan, supra, has specifically and definitely held that the federal courts are not required to follow the law of the state court or the common law in regard to impanelment of juries.

Returning to United States v. Eagan, supra, that case was decided by a court com-

posed of two judges, Justice Brewer of the Supreme Court and Judge Thayer. The quotation from Conkling apparently refers to section 800 of the Revised Statutes (28 USCA § 411) and not to section 722, now 28 USCA § 729. What Judge Brewer held is that the court had a right to apply the provision of the state statute in regard to the impancling of a trial jury. Judge Thayer, who concurred with Judge Brewer, referred directly to section 722 of the Revised Statutes, now 28 USCA § 729, and said that under this statute, in his opinion, they are authorized to conform their practice to that in the state court of Missouri. Neither judge held that they were required to do so and the suggestion of Mr. Conkling that they were bound to follow the state practice was not accepted.

In United States v. Davis (C. C.) 103 F. 457, 458, it was said: "At common law, however, as will be seen from the citations in the authorities hereinafter mentioned, the practice was to swear each juror separately as he was called, qualified, passed, and accepted by the parties. After he had touched the book, by authority of the court, it was too late to challenge him for either cause or favor, or peremptorily."

It is true the court says that "the rule was quite universal that until sworn every juror was subject to challenge, peremptory or other. * * *" But there is no essential difference as far as the right of challenge is concerned to swearing a juror immediately upon being passed for cause and for peremptory which would require the defendant to exhaust his challenge to the jury or postpone the swearing of the jury until later. The court, consisting of a single judge, held that the effect of the statute was to prolong the right of challenge until the jury was sworn. But after discussing this matter at great length on page 465 of 103 F., it is said: "But the final and all-sufficient answer to the objection is that, whatever the state practice in this regard, it is not binding on the federal courts," citing the decision of the Supreme Court hereinbefore mentioned. The actual practice in that court in the selection of a jury is stated on page 460 of the opinion in 103 F. It is shown by this statement that the practice in that court is to peremptorily challenge each juror "as soon as the juror appeared and qualified, or as soon as any challenge lodged for cause was overruled by the court." This case, far from supporting the right of challenge until the jury is sworn, expressly holds that the practice of challenging each juror for cause and peremptorily is proper although as appears from the opinion the jury was not sworn until all the jurors had been selected.

With reference to the discussion of waiver of the right to challenge I do not think the question is one of waiver at all. It is whether or not the court could lawfully require the defendant to exercise his challenge once and for all before passing the jurors for cause and for peremptory challenge as he did. What the defendant tried to do was reserve the right to challenge the jurors which he had passed for peremptory as well as for cause. This he had no right to do.

I have read the record to ascertain whether or not the evidence was sufficient to support the verdict. It is not seriously claimed that the evidence is insufficient unless we discredit the testimony of two witnesses for the government, one of whom was accused of the murder by the defendant. This question of credibility was one for the jury and not for this court.

The judgment should be affirmed.